UNITED STATES of America

v.

James FEUDALE, also known as Edward McLauglin (two cases).

Crim. Nos. 11830, 11973.

United States District Court
D. Connecticut.

June 30, 1967.

---

Samuel J. Heyman, Asst. U. S. Atty., New Haven, Conn., for the United States.

Thomas D. Clifford, of Jacobs, Jacobs, Jacobs & Jacobs, New Haven, Conn., for defendant.

TIMBERS, Chief Judge.

Defendant James Feudale is charged in a two count indictment in No. 11,830 with making for purpose of extortion an interstate telephone threat to injure the person of Hollis Whitman, in violation of 18 U.S.C. § 875(c); and, for the same purpose, with making an interstate telephone threat to injure the reputation of Whitman, in violation of 18 U.S.C. § 875(d). Defendant Feudale also is charged in a one count indictment in No. 11,973 with having made an interstate telephone call for the purpose of promoting extortion, in violation of the anti-racketeering statute, 18 U.S.C. § 1952.

The indictments were consolidated for trial. Defendant waived jury trial.

After a two day court trial and after considering the briefs and proposed find-

ings of fact submitted by both sides, the Court finds defendant

    (1) Not guilty of the violation of 18 U.S.C. § 875(c) charged in Count One of the indictment in No. 11,830;

    (2) Guilty of the violation of 18 U.S.C. § 875(d) charged in Count Two of the indictment in No. 11,830; and

    (3) Guilty of the violation of 18 U.S.C. § 1952 charged in the single count of the indictment in No. 11,973.

In addition to the above general findings, the Court makes the following special findings of fact pursuant to Rule 23(c), Fed.R.Crim.P.

### FINDINGS OF FACT

(1) Hollis Whitman, a resident of Danbury, Connecticut, where he is director of elementary education in the public school system, was in San Francisco on March 18, 1966 attending a school convention.

(2) Between 10:00 and 10:30 P.M. that night Whitman met defendant in the men's room of a San Francisco bar.

(3) After Whitman was introduced by defendant to the latter's friend, one Herbert Cusic, the three went to Whitman's hotel room.

(4) While in the hotel room, Whitman and Cusic engaged in homosexual activity, during part of which time defendant was present.

(5) Eventually defendant departed from the hotel room, leaving Whitman and Cusic alone.

(6) Later that evening defendant telephoned Whitman's room and asked to speak to Cusic.

(7) After speaking to defendant over the telephone, Cusic demanded money from Whitman, threatening to throw Whitman's expensive camera out the window if he did not comply.

(8) Whitman gave Cusic two $20 travelers' checks which Whitman had countersigned.

(9) Before leaving Whitman's room, Cusic also took from Whitman's wallet $5 and Whitman's Gulf credit card which had his Danbury residence imprinted on it.

(10) Whitman flew from San Francisco to Connecticut on March 19, 1966, arriving home late that night.

(11) Whitman had a telephone listed in his name at his residence in Danbury.

(12) On March 20, 1966 at about 3:00 P. M. Whitman received a person-to-person telephone call at his home in Danbury from defendant; Whitman recognized defendant's voice, having talked with him in person and over the telephone in San Francisco two days earlier; and defendant greeted Whitman over the phone as "Howie", the same nickname defendant had used in talking to Whitman in San Francisco.

(13) During the 3:00 P.M. telephone conversation, defendant told Whitman he had been unable to cash the travelers' checks Whitman had given Cusic; defendant said to Whitman, "We want $800 or we'll ruin you"; Whitman hung up.

(14) In San Francisco, shortly before this telephone call was made, defendant told Cusic he was going out to call Whitman; defendant left the hotel room he shared with Cusic and returned between 3:00 and 4:00 P.M.; upon his return, defendant told Cusic that he had called Whitman in Danbury, that he had told Whitman to send some money or his credit would be ruined, and that Whitman had hung up on him.

(15) At about 6:00 P.M. on March 20, 1966 Whitman received a station-to-station telephone call at his home in Danbury from defendant who said he wanted Whitman to know that he had his Gulf credit card, whereupon defendant hung up.

### CONCLUSIONS OF LAW

Giving full weight and effect to the presumption of innocence, the Court concludes that, from the facts proven directly at trial and the inferences reasonably to be drawn therefrom,

(1) The government has failed to sustain its burden of proving beyond a reasonable doubt each essential element of the crime charged in Count One of the indictment in No. 11,830; but that

(2) The government has sustained its burden of proving beyond a reasonable doubt each essential element of the crimes charged in Count Two of the indictment in No. 11,830 and in the single count of the indictment in No. 11,973, as more specifically set forth below.

(A) *No. 11,830: Count One (18 U.S.C. § 875(c))*

██ It is an essential element of the crime charged in this count that there be a communication by defendant containing a threat to injure the person of another. Upon the entire evidentiary record, the Court concludes that the government has failed to prove beyond a reasonable doubt that the telephone conversations at issue in this case contained any threat of injury to the person of Whitman. The government having failed to sustain its burden of proof with respect to this essential element, it is unnecessary to consider the state of the proof as to any other essential element of the offense. Defendant must be acquitted of the violation of 18 U.S.C. § 875(c) charged in Count One of the indictment in No. 11,830.

(B) *No. 11,830: Count Two (18 U.S.C. § 875(d))*

██ The government has proven beyond a reasonable doubt that, as charged:

(1) Defendant transmitted a telephone communication in interstate commerce from San Francisco, California, to Danbury, Connecticut, on March 20, 1966 at about 3:00 P.M.

(2) Said telephone communication contained a threat to injure the reputation of Whitman.

(3) Said telephone communication was made for the purpose of extorting money or other thing of value from Whitman.

(4) Defendant acted knowingly, wilfully and with specific criminal intent in transmitting the telephone communication threatening to injure the reputation of Whitman and for the purpose of extorting money or other thing of value from Whitman.

(C) *No. 11,973: One Count (18 U.S.C. § 1952)*

██ The government has proven beyond a reasonable doubt that, as charged:

(1) Defendant used a facility in interstate commerce in transmitting a telephone communication from San Francisco, California, to Danbury, Connecticut, on March 20, 1966 at about 3:00 P.M.

(2) Said use of a facility in interstate commerce was done with the intent to promote, carry on, or facilitate the promotion or carrying on of an unlawful activity, to wit, extortion in violation of the laws of the States of Connecticut [1] and California [2] and of the United States.[3]

(3) Defendant thereafter performed or attempted to perform an act facilitating the carrying on of the unlawful activity referred to above in paragraph (2), to wit, the second telephone call made by defendant on March 20, 1966 at about 6:00 P.M. from San Francisco, California, to Whitman at his home in Danbury, Connecticut.[4]

---

1. Conn.Gen.Stat. § 53–40 (1958). See State v. Archambault, 146 Conn. 605, 153 A.2d 451 (1959) (Section 53–40 makes it a crime maliciously to threaten, inter alia, injury to a person's reputation with intent thereby to extort money.)

2. Cal.Pen.Code §§ 519 and 520.

3. 18 U.S.C. § 875(d).

4. Accomplishment or facilitation of a single act of extortion, rather than a continuous course of business, is sufficient under

(4) Defendant acted knowingly, wilfully and with specific criminal intent in committing the acts referred to in paragraphs (1), (2) and (3) above.

## OPINION

Although defendant did not take the witness stand and did not offer any evidence in his own behalf at the trial, his extraordinarily competent counsel, through cross-examination of the government's witnesses and in oral and written argument, has vigorously urged that there is reasonable doubt as to the identification of the voice at the other end of the telephone calls to Whitman on March 20, 1966 being that of defendant.

The accuracy of Whitman's identification of defendant's voice on the telephone is challenged chiefly on the ground that Whitman did not testify to having detected any stuttering on the part of the person at the other end of the March 20 telephone calls. Defendant's counsel developed upon his cross-examination of the government witness Cusic that defendant had been stuttering for 20 years; that his stuttering is particularly noticeable when he is excited and nervous; and that even when at ease defendant stutters. FBI agent Williamson, a government witness, testified that immediately after his arrest and at the beginning of his interview with defendant on October 22, 1966 defendant stuttered and stammered, but that after he quieted down his stuttering stopped.

The Court recognizes the force of the claim by defendant's counsel that Whitman's identification of defendant's voice on the telephone on March 20 is open to question because Whitman did not notice—or at least did not testify to having noticed—any stuttering on the part of the person at the other end of the telephone. And the Court has carefully weighed all of the evidence tending to support defendant's claim in this respect.

Counterbalanced against Whitman's failure to notice any stuttering, however, is what the Court regards as very persuasive, positive identification by Whitman of the voice at the other end of the March 20 telephone calls as being the voice of defendant, based on Whitman's face to face conversation with defendant for approximately an hour two days earlier, on March 18, in San Francisco, as well as Whitman's telephone conversation with defendant in San Francisco on March 18. Whitman testified that he recognized defendant's voice at the other end of the March 20 telephone calls as having the same distinctive features he noticed when he talked with defendant in San Francisco two days earlier, namely: good English diction; moderately low, but not deep; and each word carefully articulated.

Moreover, Cusic testified that defendant told him in San Francisco on March 20 around 3:00 P.M. that he was going out to call Whitman and that after defendant returned he told Cusic he had called Whitman in Danbury and had told him to send some money or his credit would be ruined.

Having observed the demeanor of the witnesses who testified and having applied the recognized tests of credibility,[5] the Court is satisfied that the government has sustained its burden of proving beyond a reasonable doubt that it was defendant who talked from San Francisco to Whitman in Danbury over the telephone on March 20, 1966 at about 3:00 P.M. and again at about 6:00 P.M.

The Court accordingly finds defendant guilty as charged in Count Two of the indictment in No. 11,830, and as charged in the single count of the indictment in No. 11,973; because of the inconclusive nature of the government's proof with respect to the alleged threat

this statute. Marshall v. United States, 355 F.2d 999, 1002 (9 Cir. 1966), cert. denied, 385 U.S. 815 (1966).

5. See Locke Manufacturing Companies v. United States, 237 F.Supp. 80, 89 (D. Conn.1964); Lomartira v. American Automobile Insurance Company, 245 F.Supp. 124, 141 (D.Conn.1965), aff'd, 371 F.2d 550 (2 Cir. 1967).

of injury to the person of another, however, the Court finds defendant not guilty of the related offense charged in Count One of the indictment in No. 11,-830.[6]

The case will be continued pending a pre-sentence investigation and receipt by the Court of a pre-sentence report, at which time counsel and defendant will be notified as to a date for disposition.

Defendant may remain at liberty on his own recognizance pending disposition.

---

**6.** In arriving at its conclusions, the Court has found it unnecessary to consider the substance of agent Williamson's interview with defendant on October 22, 1966 and has considered in that regard only the agent's testimony at trial with respect to the quality and nature of defendant's speech; the mere fact of discovery of defendant's speech impediment by means of such interview, of course, gives rise to no claim of violation of defendant's Fifth Amendment privilege against compulsory self-incrimination. See Schmerber v. California, 384 U.S. 757, 764 (1966).