**UNITED STATES of America**
**v.**
**Francis CURCIO and John Mento.**
**Crim. No. 12625.**

United States District Court,
D. Connecticut.

Feb. 24, 1970.

J. Daniel Sagarin, Asst. U. S. Atty., New Haven, Conn., for government.

Jacob D. Zeldes and Elaine S. Amendola, of Goldstein & Peck, Bridgeport, Conn., for defendant Curcio.

TIMBERS, Chief Judge.

Defendant Francis Curcio, together with defendant John Mento, has been charged in a two count indictment with knowingly having used extortionate means to collect an extension of credit and conspiring so to do, in violation of 18 U.S.C. § 894 (Supp. IV, 1965–68) and 18 U.S.C. § 2 (1964).

Defendant Curcio's motion to dismiss the indictment raises a number of distinct claims, each of which will be separately discussed.[1]

## I

## CLAIM OF UNCONSTITUTIONALITY OF TITLE II OF CONSUMER CREDIT PROTECTION ACT

Defendant claims that Title II of the Consumer Credit Protection Act, 18 U.S.C. §§ 891–96 (Supp. IV, 1965–68) (the Act), which deals with extortionate credit transactions and on which the indictment is based, is unconstitutional on several grounds. In passing upon defendant's claim in this respect, the Court necessarily must be guided by the well established principle that a strong presumption of validity attaches to an Act of Congress. United States v. National Dairy Corp., 372 U.S. 29, 32 (1963); United States v. Rumely, 345 U.S. 41, 45 (1953); Crowell v. Benson, 285 U.S. 22, 62 (1932).[2]

(A) *Absence Of Basis For Federal Criminal Jurisdiction*

Defendant's primary claim is that the Act and the indictment upon which it is based violate the Fifth and Tenth Amendments because of the asserted absence of any basis for federal criminal jurisdiction in the Act and the absence of jurisdictional allegations in the indictment.

In passing the Act, Congress relied on its power under the Constitution to "regulate Commerce with foreign Nations, and among the several States", to

---

1. Similar motions to dismiss, raising substantially identical claims, have been filed by defendant Mento herein (Criminal No. 12,625) and by both defendants in United States v. Kosinski and Woods (Criminal No. 12,512). The rulings in the instant Memorandum of Decision on defendant Curcio's motion to dismiss the indictment apply likewise to the motions to dismiss by defendants Mento, Kosinski and Woods; margin orders are being endorsed accordingly on the latter three motions.

2. The Bar in this District is aware, however, of the notable lack of reticence on the part of the federal courts, at all levels, to hold unconstitutional Acts of Congress, or provisions thereof, in an appropriate case. See, e. g. United States v. Jackson, 390 U.S. 570 (1968), remanding 262 F.Supp. 716 (D.Conn.1967) (death penalty provision of Federal Kidnaping Act held unconstitutional); Marchetti v. United States, 390 U.S. 39 (1968), rev'g 352 F.2d 848 (2 Cir. 1965) (federal wagering tax and registration provisions of Internal Revenue Act held unconstitutional).

"establish . . . uniform Laws on the subject of Bankruptcies throughout the United States," and to "make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers." U.S.Const. art. I, § 8, cl. 3, 4, 18.

Moreover, the Act contains a strikingly articulate statement of congressional findings and declaration of purpose, as set forth in the margin,[3] the thrust of which is to show the direct relationship between organized crime and extortionate credit transactions, and the determination of Congress to strike at such evils through the exercise of its commerce and bankruptcy powers.

■■ The Act clearly is sustainable as a valid exercise of the power of Congress to regulate interstate commerce on the basis of its findings that extortionate credit transactions of the kind proscribed by the Act adversely affect interstate commerce. These findings were based on the evidence before Congress; they have a rational basis; and as such they are not open to question by this Court. United States v. Gainey, 380 U.S. 63, 66–68 (1965); Katzenbach v. McClung, 379 U.S. 294, 303–304 (1964); Tot v. United States, 319 U.S. 463, 466 (1943).

■ The fact that the Act makes certain extortionate credit transactions purely intrastate in character the basis of a criminal offense does not render the Act an invalid exercise of Congress' commerce power. Such intrastate activities may affect interstate commerce, as Congress specifically found: "Even where extortionate credit transactions are purely intrastate in character, they nevertheless directly affect interstate and foreign commerce." *Supra* note 3. As the Supreme Court pointed out in United States v. Wrightwood Dairy Co., 315 U.S. 110 (1942):

"The commerce power is not confined in its exercise to the regulation of commerce among the states. It extends to those activities intrastate which so affect interstate commerce, or the exertion of the power of Congress over it, as to make regulation of them appropriate means to the attainment of a legitimate end, the effective execution of the granted power to regulate interstate commerce." 315 U.S. at 119.

Accord, Katzenbach v. McClung, *supra*, at 301–303; Wickard v. Filburn, 317 U.S. 111 (1942).

■ Defendant concedes that Congress in the exercise of its commerce

3. "(a) The Congress makes the following findings:

(1) Organized crime is interstate and international in character. Its activities involve many billions of dollars each year. It is directly responsible for murders, willful injuries to person and property, corruption of officials, and terrorization of countless citizens. A substantial part of the income of organized crime is generated by extortionate credit transactions.

(2) Extortionate credit transactions are characterized by the use, or the express or implicit threat of the use, of violence or other criminal means to cause harm to person, reputation, or property as a means of enforcing repayment. Among the factors which have rendered past efforts at prosecution almost wholly ineffective has been the existence of exclusionary rules of evidence stricter than necessary for the protection of constitutional rights.

(3) Extortionate credit transactions are carried on to a substantial extent in

interstate and foreign commerce and through the means and instrumentalities of such commerce. Even where extortionate credit transactions are purely intrastate in character, they nevertheless directly affect interstate and foreign commerce.

(4) Extortionate credit transactions directly impair the effectiveness and frustrate the purposes of the laws enacted by the Congress on the subject of bankruptcies.

(b) On the basis of the findings stated in subsection (a) of this section, the Congress determines that the provisions of chapter 42 of title 18 of the United States Code [this chapter] are necessary and proper for the purpose of carrying into execution the powers of Congress to regulate commerce and to establish uniform and effective laws on the subject of bankruptcy." Consumer Credit Protection Act, tit. II, § 201, Pub.L. 90–321, 82 Stat. 146 (1968).

power can proscribe extortionate credit transactions which affect interstate commerce as criminal; but he maintains that jurisdictional facts must be alleged and proven on a case by case basis and he objects to the Act's failure to provide for a case by case determination that particular extortionate credit transactions affect interstate commerce. Defendant argues that as a consequence the Act may result in prosecutions for transactions which in no way affect interstate commerce; and that this would constitute regulation of conduct solely within the province of the states to regulate.

A similar argument, however, was rejected by the Supreme Court in Katzenbach v. McClung, *supra*. At issue there was the constitutionality of a federal statute prohibiting segregation and discrimination in public accommodations on the ground that such segregation and discrimination adversely affects interstate commerce. The Court held that the statute was not an invalid exercise of Congress' commerce power because it failed to provide for a case by case determination that racial discrimination in a particular restaurant adversely affected interstate commerce. Katzenbach v. McClung, *supra*, at 302–303. The Court stated:

> "[W]here we find that the legislators, in light of the facts and testimony before them, have a rational basis for finding a chosen regulatory scheme necessary to the protection of commerce, our investigation is at an end." 379 U.S. at 304.

■ Assuming arguendo that the Act were not a valid exercise of Congress' commerce power, it is sustainable as a valid exercise of Congress' power to establish uniform laws on the subject of bankruptcy on the basis of its findings that extortionate credit transactions of the kind prohibited by the Act impair the effectiveness and frustrate the purposes of the federal bankruptcy laws. Congress' findings with respect to the effect of extortionate credit transactions upon the bankruptcy laws, like its find-

ings with respect to their effect on interstate commerce, have a rational basis and are not open to question. Thus, Congress may regulate such transactions in the exercise of its bankruptcy power.

In addition to his attack upon the jurisdictional basis of the Act, defendant's attack upon its constitutionality is directed at specific provisions of the Act.

(B) *Prohibition Against "Implicit Threat" is Void for Vagueness*

Defendant claims that 18 U.S.C. §§ 891 and 894 are unconstitutional on the ground, among others, that the inclusion of the term "implicit threat" in these sections renders them so vague as to be void under the due process clause of the Fifth Amendment. Section 894(a) makes it a criminal offense to collect any extension of credit by "extortionate means" which Section 891 defines as any means involving "the use, or an express or implicit threat of use, of violence . . . to cause harm to the person, reputation, or property of any person". Sections 894(b) and (c) specify the types of evidence which are admissible under certain circumstances to prove an "implicit threat". Defendant contends that an act or statement constituting an implicit threat under these sections may be entirely innocent to all outward or objective appearances; that the Act does not adequately differentiate superficially innocent acts from truly innocent acts; and therefore the provisions are void for vagueness.

■■ When Congress proscribed the use of implicit threats—that is, acts or statements falling short of explicit threats—in the statute here in question, it simply incorporated well established federal decisional law of extortion into the Act. United States v. Palmiotti, 254 F.2d 491, 495 (2 Cir.1958); see Carbo v. United States, 314 F.2d 718, 740–41 (9 Cir.1963), cert. denied, 377 U.S. 953 (1964); Bianchi v. United States, 219 F.2d 182, 189–90 (8 Cir.1955), cert. denied, 349 U.S. 914 (1955), United States v. Compagna, 146 F.2d 524, 528 (2 Cir. 1944), cert. denied, 324 U.S. 867 (1944).

By prohibiting the use of implicit threats, the Act does not make innocent acts or statements criminal. Acts or statements constitute implicit threats only if they instill fear in the person to whom they are directed or are reasonably calculated to do so in light of the surrounding circumstances and there is an intent on the part of the person who performs the act or makes the statement to instill fear. See United States v. Tropiano, 418 F.2d 1069, 1081 (2 Cir. 1969), cert. denied, 397 U.S. 1021 (1970).

### (C) Admission Of Evidence Of Defendant's Prior Conduct, Character And Reputation

Defendant also claims that Section 894 is unconstitutional on the ground that it permits introduction of evidence of defendant's prior conduct, character and reputation. Section 894(b) provides that evidence tending to show that "one or more extensions of credit by the creditor were, to the knowledge of the person against whom the implicit threat was alleged to have been made, collected or attempted to be collected by extortionate means" may be introduced to show the use of an implicit threat as a means of collection of an extension of credit. Section 894(c) provides that evidence "tending to show the reputation of the defendant in any community of which the person against whom the alleged threat was made was a member at the time of the collection or attempt at collection" may be introduced under certain circumstances to show the use of an express or explicit threat as a means of collection of an extension of credit.

Defendant contends that admission of evidence of defendant's prior conduct, character and reputation in accordance with these provisions of the Act would violate the Fifth Amendment's due process clause and the Sixth Amendment's right of confrontation clause. This contention is based on the premise that such evidence would show the criminal character and disposition of defendant which would be highly prejudicial and irrelevant.

■■ It is well established, however, that evidence which is inadmissible for one purpose may be admissible for another. Evidence of a defendant's prior conduct, character and reputation is not admissible to show that he is a "bad" man or to prove a propensity on his part to commit the crime charged; but it may be admissible if relevant for some other purpose and its probative value outweighs its prejudicial nature. Spencer v. Texas, 385 U.S. 554, 560–61 (1967); United States v. Tropiano, supra, at 1081; United States v. Deaton, 381 F.2d 114, 117–18 (2 Cir. 1967); United States v. Knohl, 379 F.2d 427, 438–39 (2 Cir. 1967), cert. denied, 389 U.S. 973 (1967).

■ The provisions of the Act here in question do not allow introduction of a defendant's prior conduct, character and reputation to show his criminal character and disposition. Rather, they permit its introduction to demonstrate the state of the victim's mind and to prove the use of implicit threats. When such evidence is relevant to and probative of the state of the victim's mind and the use of implicit threats, it is admissible for that purpose under the aforementioned established principles of the law of evidence. See United States v. Tropiano, supra, at 1081; Carbo v. United States, supra, at 741. Thus, the sections in question merely represent a codification of these principles.

Defendant also contends that introduction of evidence of his prior conduct, character and reputation under Sections 894(b) and (c) would have the effect of shifting the burden of proof from the prosecution to defendant by obliging him to come forward with evidence to negate the inferences raised by such evidence, in violation of the Fifth Amendment due process clause; that it would have the effect of compelling him to testify in his own behalf in order to overcome the inferences raised by such evidence, in violation of the Fifth Amendment privilege against self-incrimination; and that it would have the effect

of imposing sanctions for past guilt or community knowledge of guilt.

 In the opinion of this Court, these contentions lack substance. Sections 894(b) and (c) do not shift the burden of proof. The government still has the burden of proving use of implicit threats to collect an extension of credit under these provisions of the Act; they simply allow the government to do so, under conditions specified in the Act, by introducing evidence of reputation and past conduct to show that defendant's acts or statements, under all the surrounding circumstances, constituted an implicit threat. As for the claim that these provisions compel a defendant to testify in violation of his privilege against self-incrimination, there is nothing in the Act which compels a defendant to testify in his own behalf; he can remain silent if he so chooses. Finally, these provisions cannot realistically be said in effect to punish past conduct. It is the extortionate collection of an extension of credit for which a sanction is imposed; the evidence of past conduct, character and reputation merely goes to whether defendant has used implicit threats to collect an extension of credit.

(D) *Unlawful Delegation Of Congressional Power To The States*

In addition, defendant claims that Section 892 is unconstitutional on the ground that, by allowing introduction of evidence of the enforceability under state law of a particular extension of credit, it constitutes an unlawful delegation to the several states of the power of Congress to make conduct criminal. Section 892(b)(1) provides that the unenforceability under state law of a particular extension of credit is prima facie evidence under certain circumstances that an extension of credit is extortionate in violation of Section 892(a). Under Section 894(c) the unenforceability under state law of a particular extension of credit under certain circumstances is a condition upon the admission of evidence of defendant's reputation for the purpose of showing an express or implicit threat to collect an extension of credit in violation of Section 894(a).

 Defendant's unlawful delegation claim must fail in light of the well established principle that Congress may incorporate by reference state criminal laws in federal criminal statutes. The leading case is United States v. Sharpnack, 355 U.S. 286 (1958), in which the Supreme Court upheld a federal statute prohibiting conduct on federal enclaves which was prohibited by the criminal law of the state in which the enclave was located. The Supreme Court also has upheld the constitutionality of other federal criminal statutes which incorporate by reference state criminal laws. Kentucky Whip & Collar Co. v. Illinois Central R.R. Co., 299 U.S. 334 (1937); Clark Distilling Co. v. Western Maryland Ry. Co., 242 U.S. 311 (1917). And see United States v. Feudale, 271 F.Supp. 115, 118 nn. 1 & 2 (D. Conn.1967).

(E) *Impairment Of Freedom Of Contract And Freedom Of Speech*

 Defendant's remaining claims with respect to the constitutionality of Section 894—that its prohibition of the use of implicit threats to collect an extension of credit infringes freedom of contract in violation of the Fifth Amendment and freedom of speech in violation of the First Amendment—are believed to be without merit and will not be discussed at length. Freedom of contract and freedom of speech are not absolute rights. Section 894 is not an arbitrary or unreasonable restriction on the freedom to contract inasmuch as it is "addressed to a legitimate end and the measures taken are reasonable and appropriate to that end." Home Building and Loan Ass'n v. Blaisdell, 290 U.S. 398, 438 (1934). Likewise, Section 894 does not arbitrarily or unreasonably restrict freedom of speech inasmuch as it does not punish innocent speech. As pointed out above, the prohibition in Section 894 against the use of implicit

threats simply incorporates the well established law of extortion.[4]

## II

### CLAIM OF ENFORCEMENT OF EX POST FACTO LEGISLATION

Another claim of defendant is that prosecution of him for violations of Section 894 as charged in the indictment offends Article I, § 9, of the Constitution and the due process clause of the Fifth Amendment on the ground such prosecution would constitute enforcement of ex post facto legislation. Defendant is charged with use of extortionate means to collect an extension of credit in violation of Section 894. The alleged use of extortionate means to collect an extension of credit as charged in counts one and two of the indictment occurred after the effective date of the Act; but defendant contends that the extension of credit involved occurred prior thereto and his ex post facto claim rests on this asserted fact.

A similar claim recently was rejected by this Court in a prosecution under this Act in United States v. DeStafano, Crim. No. 12343, Record at 138–40 (D. Conn., October 17, 1969) (Zampano, J.).

 The indictment in the instant case does not specify when the alleged extension of credit took place; but even if it took place before the effective date of the Act, the ex post facto claim is without merit. Since it is the use of extortionate means to collect an extension of credit that is the crucial element of the offense charged, the material date is that on which the alleged use of extortionate means to collect an extension of credit occurred, not the date on which the extension of credit occurred. See also McDonald v. Massachusetts, 180 U.S. 311 (1901); Alway v. United States, 280 F.Supp. 326, 334–35 (C.D.Cal.1968); United States v. Platt, 31 F.Supp. 788, 792–93 (S.D. Tex. 1940).

4. Subsequent to the filing of the opinion in the instant case, the Court of Appeals for the Second Circuit upheld the constitutionality of Title II of the Con-

## III

### CLAIM THAT INDICTMENT IS MULTIPLICITOUS

 Still another claim of defendant is that prosecution of him as charged in the indictment violates the due process clause of the Fifth Amendment and subjects him to cruel and unusual punishment in violation of the Eighth Amendment because he is charged with two separate offenses on the basis of the same alleged conduct.

Count one charges defendants Curcio and Mento with the use of extortionate means to collect an extension of credit in violation of Section 894. Count two charges both defendants with conspiring to use extortionate means to collect an extension of credit. Defendant asserts that the offenses charged in counts one and two involve the same conduct and do not allege separate offenses.

Defendant's claim in this respect is disposed of by Callanan v. United States, 364 U.S. 587 (1961), in which the Supreme Court upheld petitioner's conviction on one count for obstructing commerce by extortion and on another count for conspiring to do so—both in violation of 18 U.S.C. § 1951.

## IV

### CLAIM THAT INDICTMENT IS BASED ON HEARSAY EVIDENCE

 Defendant further claims that the indictment is invalid because it is based on hearsay testimony. The government denies that the indictment was based on hearsay evidence; but assuming arguendo that it were based on hearsay, that showing, without more, is not a sufficient basis for dismissing an indictment. United States v. Costello, 350 U.S. 359 (1956); United States v. Hughes, 411 F.2d 461 (2 Cir. 1969); United States v. Jordan, 399 F.2d 610, 615 (2 Cir.), cert. denied, 399 U.S. 1005 (1968).

sumer Credit Protection Act, 18 U.S.C. §§ 891–96 (Supp. IV, 1965–68). United States v. Perez, —— F.2d —— (2 Cir. 1970), slip op. 2655, 2656–72 (May

## V

### CLAIM OF ILLEGALLY CONSTITUTED GRAND JURY

 Defendant also claims that the indictment is invalid on the ground that the grand jury which returned it was illegally constituted because it did not include residents of Fairfield County where defendant resides. There is nothing in the Constitution, the statute governing grand jury selection and composition, or the decisional law which requires that a grand jury be composed of members from the county where a defendant resides. Defendant's other claim that the grand jury which returned the indictment was illegally constituted because the jury questionnaire did not inquire whether convicted felons had had their civil rights restored by pardon or amnesty is without merit.

## VI

### CLAIM OF ABSENCE OF ALLEGATION OF OVERT ACT KNOWINGLY COMMITTED

 Defendant's final claim that count two of the indictment fails to allege an overt act *knowingly* committed in furtherance of the purpose or object of the conspiracy is without merit. Defendants Curcio and Mento are charged in count two with having *knowingly* conspired to use extortionate means to collect extensions of credit. As an overt act in furtherance of the conspiracy, it is alleged that Mento collected payments from one Edward J. Stemper on a bimonthly basis during the period from June 1, 1968 to February 1, 1969. More than this is not required as a matter of pleading.

### ORDER

ORDERED that defendant Curcio's motion to dismiss the indictment be, and the same hereby is, denied in all respects.

The Court acknowledges the helpful briefs and oral arguments by competent counsel on both sides.