### UNITED STATES of America, Appellee,

v.

### Angelo DeSTAFANO, Appellant.

### No. 845, Docket 34376.

United States Court of Appeals, Second Circuit.

Argued June 17, 1970.

Decided July 22, 1970.

John J. Luckart, Bridgeport, Conn., for appellant.

Leslie Byelas, Asst. U. S. Atty. (Stewart H. Jones, U. S. Atty., for the District of Connecticut, on the brief), for appellee.

Before ANDERSON and FEINBERG, Circuit Judges, and MacMAHON, District Judge.*

FEINBERG, Circuit Judge:

Angelo DeStafano appeals from his conviction on three counts of violating 18 U.S.C. § 894, the federal loansharking statute, after a jury trial before the United States District Court for the District of Connecticut, Robert C. Zampano, J. Appellant received concurrent three-year sentences on each count. Count One of the indictment charged appellant, together with one Thomas De-Brizzi (who became a fugitive prior to trial), with the use of extortionate means to collect an extension of credit; Count Two charged the use of extortionate means to punish the nonrepayment of the same debt; and Count Three charged appellant and DeBrizzi with conspiracy to use extortionate means to collect the debt and to punish its nonrepayment. We affirm the conviction.

**I.**

From the evidence before it, the jury would have been justified in finding the following facts. The victim of the alleged criminal acts was Anthony Bove, Sr., the owner and manager of a gas station in Stratford, Connecticut. Sometime during May or June 1968, Bove's son, Anthony Bove, Jr., borrowed $3,000 from DeBrizzi. The son apparently became unable to repay the loan, which bore an interest rate in excess of 100 per cent. He received a telephone call from appellant, who told him to "get down here [to DeBrizzi's] right away, with your father." The purpose of requiring the father's presence was to get him to guarantee his son's loan. Rather than appear, the son fled to Florida. There followed a series of incidents in which appellant and DeBrizzi attempted to force Bove, Sr. to pay the loan himself or to turn over his son to the tender mercies of DeBrizzi.

In mid-September 1968, appellant came to the father's gas station and demanded to know where Bove, Jr., was, stating that DeBrizzi was "hot" and that the loan had not been paid. Appellant repeatedly asked Bove, Sr. where his son was, and ominously also asked him for his daughter's address. A few days later, appellant reappeared at the gas station, accompanied by DeBrizzi himself. DeBrizzi told Bove, Sr. that he had to get the money up "or else," that "Your son's a pig * * * I'll tell you, if you give me your son, then you don't have to give me any money. I got to make an example." The conversation left Bove, Sr. shaken and he went home for the rest of the day.

The next time Bove, Sr. heard from appellant was by telephone; he was informed that if he brought his son home "they would forget the whole thing." This conciliatory attitude, if such it was, soon disappeared. A few days later, appellant called Bove, Sr. again, informing him that "DeBrizzi was getting hot and he had to have the money" and that Bove, Sr. would "have to start paying vig [penalty payments] on it." In the background, DeBrizzi could be heard shouting "tell the son-of-a-B to get the money up or else."

The last confrontation between Bove, Sr. and appellant took place toward the

---

* Of the Southern District of New York sitting by designation.

end of October when DeBrizzi and appellant appeared at the gas station. DeBrizzi, in appellant's presence, told Bove, Sr. that he either had to get his son to return or Bove, Sr. would be killed so that his son would come home for the funeral. One of the gas station employees started to leave to call the police; DeBrizzi told Bove, Sr. to "get that bum back here, because if he is going to call the Stratford Police, * * * I'll be out on bond in five minutes. I'll come back here and make you both look live a sieve."

## II.

Against the background of this conduct, appellant wisely does not argue insufficiency of the evidence. He makes his chief attack instead on the constitutionality of the statute under which he was convicted. 18 U.S.C. § 894 provides:

(a) Whoever knowingly participates in any way, or conspires to do so, in the use of any extortionate means

(1) to collect or attempt to collect any extension of credit, or

(2) to punish any person for the nonrepayment thereof,

shall be fined not more than $10,000 or imprisoned not more than 20 years, or both.

(b) In any prosecution under this section, for the purpose of showing an implicit threat as a means of collection, evidence may be introduced tending to show that one or more extensions of credit by the creditor were, to the knowledge of the person against whom the implicit threat was alleged to have been made, collected or attempted to be collected by extortionate means or that the nonrepayment thereof was punished by extortionate means.

(c) In any prosecution under this section, if evidence has been introduced tending to show the existence, at the time the extension of credit in question was made, of the circumstances described in section 892(b) (1) or the circumstances described in section 892(b) (2), and direct evidence is not available, then for the purpose of showing that words or other means of communication, shown to have been employed as a means of collection, in fact carried an express or implicit threat, the court may in its discretion allow evidence to be introduced tending to show the reputation of the defendant in any community of which the person against whom the alleged threat was made was a member at the time of the collection or attempt at collection.

18 U.S.C. § 891 defines extortionate means as "any means which involves the use of an express or implicit threat of use of violence or other criminal means *to cause harm to the person, reputation, or property of any person.*"

■ Appellant first contends that a prohibition of "implicit" threats of violence or other criminal means is unconstitutionally vague, because it may include *"entirely innocent"* [1] acts or communications made threatening only by ,the belief of the victim that, because of the character or reputation of the lender, he is being threatened. According to appellant, the statute would then subject wholly innocent conduct or communication to possible criminal penalties, an impermissible result. The Government responds that the proscription of "implicit" threats is not vague at all and that Congress was simply incorporating into the statute well established law of extortion, citing Carbo v. United States, 314 F.2d 718, 740–41 (9th Cir. 1963), cert. denied, 377 U.S. 953, 84 S.Ct. 1626, 12 L.Ed.2d 498 (1964), and United States v. Palmiotti, 254 F.2d 491, 495–96 (2d Cir. 1958). There is force to this argument, but for the reasons set forth below we do not feel that we have to resolve all aspects of the issue. All of the acts and words of appellant and

---

1. Appellant's brief, p. 9 (emphasis is in original).

DeBrizzi were, if not express threats, at the least, clearly made threatening by the circumstances or the manner in which they were uttered. None could be called "entirely innocent" acts or words in which the specter of a threat came only from the subjective belief of the victim.

On these facts we need not deal with the question whether the statute also reaches "entirely innocent" conduct if the victim believes that a threat is being made. See United States v. Raines, 362 U.S. 17, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960). It has been pointed out that the void-for-vagueness doctrine actually serves fundamental and perhaps infrequently expressed "judicially felt needs and pressures." Note, The Void-for-Vagueness Doctrine, 109 U.Pa.L.Rev. 67, 75 (1960). But even if we take into account those special considerations, this is not an appropriate case to allow appellant to assert the unconstitutionality of a statute when applied to hypothetical facts rather than to his own case. Certainly, no first amendment right is substantially involved here. Compare Dombrowski v. Pfister, 380 U.S. 479, 85 S. Ct. 1116, 14 L.Ed.2d 22 (1965); see Raines, *supra*, 362 U.S. at 22–23, 80 S. Ct. 519; Note, The First Amendment Overbreadth Doctrine, 83 Harv.L.Rev. 844 (1970).[2] In addition, we note that the statute punishes only the *knowing* use of extortionate means, and thus prohibits the making of an "implicit" threat only if, at a minimum, the actor knows that his words or act ought reasonably to be taken as a threat. The knowledge requirement may well in itself insulate this statute from attack on vagueness or overbreadth grounds, see United States v. Curcio, 310 F.Supp. 351 (D.Conn.1970); at the least we think that it makes highly doubtful any attack on the face of the statute. We conclude, therefore, that whatever slight vitality the vagueness argument might have in

another context, it cannot benefit appellant here.

### III.

Appellant also presents other constitutional arguments. He challenges sections 894(b) and (c), which allow the Government to introduce evidence of the prior use of extortionate means by a defendant and, under certain conditions, evidence of a defendant's reputation as an extortionate lender, to prove the nature of an implicit threat. These provisions are attacked on a number of grounds; we need not deal with them, since no such evidence was introduced here.

Appellant next challenges the power of Congress under the commerce clause and bankruptcy clause of the Constitution to enact a statute of this type. The argument is foreclosed by United States v. Perez, 426 F.2d 1073 (2d Cir. 1970), which sustained the statute under the commerce clause.

Appellant also contends that the extension of credit here—the loan to Bove, Jr.—took place before the effective date of the statute; therefore, the argument goes, appellant was convicted under an ex *post facto* law. There is a dispute over when the loan took place,[3] but in any event the contention is without merit. The making of the loan was not, in this sense, an element of the crime. Appellant was charged with using extortionate means to collect a loan already made. That portion of appellant's conduct clearly occurred after the effective date of the statute. Appellant had the notice necessary to conform his actions to the new requirement of the law.

Finally, appellant claims that the indictment was multiplicitous in charging him in Count One with "participating in the use of extortionate means * * * to collect an extension of credit" and in

---

2. We do not regard as weighty appellant's claim that § 894 violates his freedom of speech.

3. Appellant points out that he requested, but was denied, a jury instruction which would have required the jury to find when the loan was made.

Count Three with conspiring to so participate, both in violation of 18 U.S.C. § 894. The Government responds by citing Callanan v. United States, 364 U.S. 587, 81 S.Ct. 321, 5 L.Ed.2d 312 (1961), in which the Supreme Court by a 5–4 vote upheld a conviction on one count for obstructing commerce by extortion and on another count for conspiring to do so, both in violation of the Hobbs Act, 18 U.S.C. § 1951.

 Whether an indictment is actually multiplicitous and, if so, what is the proper remedy for multiplicity are difficult questions, as the opinions in Callanan and United States v. Ketchum, 320 F.2d 3 (2d Cir.), cert. denied, 375 U.S. 905, 84 S.Ct. 194, 11 L.Ed.2d 145 (1963), make clear. See also 8 Moore, Federal Practice ¶8.07 [1] (1969); 1 Wright, Federal Practice and Procedure § 145 (1969). Both the majority and minority opinions in Callanan at least agree that the question is essentially one of statutory construction, and the reliance on legislative history in Callanan is one of the bases appellant offers to distinguish it. Unfortunately, the legislative history of the federal loansharking statute is modest at best, see United States v. Perez, supra, and unilluminating on this point. However, there is certainly nothing unusual about treating as distinct crimes a conspiracy and the substantive offense that is its object, as Mr. Justice Frankfurter pointed out for the majority in Callanan, 364 U.S. at 593, 81 S.Ct. 321. Moreover, even if Count One and Count Three were to be regarded as charging the same offense —and we regard that as unlikely—we do not believe that appellant would prevail. Where, as in this case, a defendant has received concurrent sentences of the same length on the two counts which are allegedly multiplicitous, we do not think that a new trial would be required, much less the dismissal of the indictment on both counts, the relief appellant suggests.[4]

The other points raised by appellant are either without merit or were not raised in the trial court and will therefore not be considered by us. Judgment of conviction affirmed.

---

4. Compare Milanovich v. United States, 365 U.S. 551, 81 S.Ct. 728, 5 L.Ed.2d 773 (1961), which involved crimes held to be factually inconsistent for the same defendant (sealing currency and receiving the stolen currency).