**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Gene Westley REED, Defendant-Appellant.**

**No. 73-1371.**

United States Court of Appeals, Sixth Circuit.

Argued Oct. 17, 1973.

Decided Jan. 8, 1974.

Russell X. Thompson, Memphis, Tenn., for appellant.

Larry E. Parrish, Asst. U. S. Atty., for appellee; Thomas F. Turley, Jr., U.

S. Atty., W. D. Tenn., Memphis, Tenn., on brief.

Before PHILLIPS, Chief Judge, and EDWARDS and McCREE, Circuit Judges.

EDWARDS, Circuit Judge.

Appellant was convicted after jury trial on one count of a two-count indictment charging violation of a statute prohibiting possession or sale of an instrument primarily useful for wiretapping. The provision under which he was convicted is as follows:

" . . . any person who willfully
. . .

(b) manufactures, assembles, possesses, or sells any electronic, mechanical, or other device, knowing or having reason to know that the design of such device renders it primarily useful for the purpose of the surreptitious interception of wire or oral communications, and that such device or any component thereof has been or will be sent through the mail or transported in interstate or foreign commerce;
. . . shall be fined . . . or imprisoned. . . ." 18 U.S.C. § 2512(1)(b) (1970).

The District Judge sentenced appellant to three years probation and a $1,000 fine.

The case was presented to the jury upon stipulated facts as follows:

"In the late 1950's or early 1960's the Appellant-Defendant, Gene Westley Reed, hereinafter referred to as Defendant, purchased a tape recorder, brand name, Mayfair, Model FT–702, Serial No. 01826, along with a link of insulated two-conductor wire with a phone plug and two small alligator clips from a company known as Glen Allen Company, a retail dealer in electronic equipment, which was located at that time in Memphis, Tennessee. The Defendant paid a sum of between One Hundred ($100.00) Dollars and. One Hundred Fifty ($150.00) Dollars for the tape recorder along with its accessories. At the time this machine was purchased the Defendant was in the private detective business, had previously been in the radio repair business, and was therefore knowledgeable about various electronic equipment and was particularly knowledgeable about this type of tape recorder and its various uses since it was used in the Defendant's private detective business. The Defendant, therefore, knew that the design of this particular tape recorder rendered it primarily useful for the purpose of the surreptitious interception of wire communications and also knew that such device or components thereof had been transported in interstate or foreign commerce when he purchased the tape recorder in the late 1950's or early 1960's."

Appellant presents two issues of law:

1. Whether or not 18 U.S.C.A., Sec. 2512(1)(b), as applied in this case, is ex post facto contrary to Article I, Section 10 of the Constitution of the United States.

2. Whether or not the offense created by 18 U.S.C.A., Sec. 2512(1)(b) applies to a forbidden article which comes to rest in interstate commerce and is then subsequently sold in intrastate commerce.

The stipulated facts upon which this case was heard show that appellant knew that the instrument was "primarily useful for surreptitious interception of wire . . . communications," and that it had previously moved in interstate commerce.

As to appellant's claim that the law as applied to him was ex post facto legislation, we hold that the fact that the instrument had been transported in interstate commerce prior to the passage of the act, which made its possession and sale illegal, does not require us to invalidate this conviction. Under the stipulation it is clear that the offense of possession and sale charged against appellant followed rather than preceded the adoption of the statute.

There are many cases which have dealt with and rejected an ex post facto argument concerning some element of a crime where the element (but not the prohibited act) had come into being or taken place prior to passage of the criminal statute.

In 1898 the Supreme Court reviewed a state statute making it a misdemeanor for a person who had been convicted of a felony to practice medicine. Against an ex post facto challenge the Court upheld the statute as applied to one who had been convicted of the felony before the statute was passed. Hawker v. New York, 170 U.S. 189, 18 S.Ct. 573, 42 L. Ed. 1002 (1898).

The basic tests of ex post facto legislation are set forth in Calder v. Bull, 3 Dall. 386, 3 U.S. 386, 389, 1 L.Ed. 648 (1798). We have compared the facts herein to the *Calder* standards and we cannot find that they fall within any of the four categories there enumerated.

Much more in point are such cases as United States v. Day, 476 F.2d 562 (6th Cir. 1973); United States v. McCreary, 455 F.2d 647 (6th Cir. 1972); Williams v. United States, 426 F.2d 253 (9th Cir.) cert. denied, 400 U.S. 881, 91 S.Ct. 125, 27 L.Ed.2d 119 (1970). These cases rejected an ex post facto complaint as to the Federal Firearms Act, 18 U.S.C. App. § 1202(a) (1970), which prohibits possession of firearms by persons convicted of felonies, including those so convicted before the date of the statute.

*See also* United States v. DeStafano, 429 F.2d 344 (2d Cir. 1970), cert. denied, 402 U.S. 972, 91 S.Ct. 1656, 29 L. Ed.2d 136 (1971); United States v. Curcio, 310 F.Supp. 351 (D.Conn.1970). These cases rejected an ex post facto attack upon the Federal Loan Sharking Statute (18 U.S.C. §§ 891–96) which prohibited extortion employed to collect a debt, including debts contracted prior to passage of the statute.

■ Appellant's second issue basically raises the question as to whether Congress intended to prohibit an intrastate act (possession and sale of the recorder) and, if so, whether it had constitutional power to do so.

We believe the first part of this issue is answered by the express language of Section 2512(1)(b) which we have quoted fully above. Stripped to its essentials as to this issue, it reads: "Any person who wilfully . . . possesses or sells any electronic . . . device . . . knowing . . . that such device . . . has been . . . transported in interstate . . commerce . . . shall be fined . · . . or imprisoned . . .." This language is not amenable to any limitation as to intrastate possession or sale. Inevitably, indeed, the great majority of offenses contemplated by this section will be intrastate in character.

The Congressional intent in relation to this legislation is made quite clear by the report of the Committee which had charge of this legislation. That report called for an "attack [which] must be made on the possession, distribution, manufacture and advertising of intercepting devices. All too often the invasion of privacy itself will go unknown. Only by striking at all aspects of the problem can privacy be adequately protected." S.Rep.No.1097, 90th Cong., 2d Sess. (1968), *reprinted in* 1968 U.S.Code Cong. & Admin. News, pp. 2112, 2156.

Nor do we have any doubt about the constitutionality of the legislation as applied to intrastate possession or sale. It was clearly Congress' intention to respond to a national problem intimately affecting interstate commerce by a national solution. This intention is reflected in the Congressional findings which followed extensive hearings on the bill:

TITLE III—WIRETAPPING AND ELECTRONIC SURVEILLANCE FINDINGS

Sec. 801. On the basis of its own investigations and of published stud-

ies, the Congress makes the following findings:

(a) Wire communications are normally conducted through the use of facilities which form part of an interstate network. *The same facilities are used for interstate and intrastate communications.* There has been extensive wiretapping carried on without legal sanctions, and without the consent of any of the parties to the conversation. Electronic, mechanical, and other intercepting devices are being used to overhear oral conversations made in private, without the consent of any of the parties to such communications. The contents of these communications and evidence derived therefrom are being used by public and private parties as evidence in court and administrative proceedings, and by persons whose activities affect interstate commerce. *The possession, manufacture, distribution, advertising, and use of these devices are facilitated by interstate commerce.*

(b) In order to protect effectively the privacy of wire and oral communications, to protect the integrity of court and administrative proceedings, and to prevent the obstruction of interstate commerce, it is *necessary for Congress to define on a uniform basis* the circumstances and conditions under which the interception of wire and oral communications may be authorized, to prohibit any unauthorized interception of such communications, and the use of the contents thereof in evidence in courts and administrative proceedings.

(c) Organized criminals make extensive use of wire and oral communications in their criminal activities. The interception of such communications to obtain evidence of the commission of crimes or to prevent their commission is an indispensable aid to law enforcement and the administration of justice.

(d) To safeguard the privacy of innocent persons, the interception of wire or oral communications where none of the parties to the communication has consented to the interception should be allowed only when authorized by a court of competent jurisdiction and should remain under the control and supervision of the authorizing court. Interception of wire and oral communications should further be limited to certain major types of offenses and specific categories of crime with assurances that the interception is justified and that the information obtained thereby will not be misused.

Act of June 19, 1968, Pub.L.No. 90–351, Title III, § 801, 82 Stat. 211. (Emphasis added.)

As long ago as 1939 the Supreme Court recognized Congressional power to legislate concerning intrastate matters affecting the interstate communication system. Speaking of Section 605 of the Federal Communications Act and its prohibition on interception and divulgence of telephonic communications, the Supreme Court said:

"Plainly the interdiction thus pronounced is not limited to interstate and foreign communications. And, as Congress has power, when necessary for the protection of interstate commerce, to regulate intrastate transactions, there is no constitutional requirement that the scope of the statute be limited so as to exclude intrastate communications." Weiss v. United States, 308 U.S. 321, 327, 60 S.Ct. 269, 84 L.Ed. 298 (1939). (Footnotes omitted.)

Since an actual interstate nexus is conceded in this case by the stipulated facts, and in addition the intrastate sale of recording devices like the one here at issue has been found by Congress to affect interstate commerce, we find appellant's argument based on United States v. Bass, 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971), to be inapposite.

The judgment of the District Court is affirmed.