**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Vito SPILLONE, Defendant–Appellant.**

**UNITED STATES of America, Plaintiff–Appellee,**

v.

**John Clyde ABEL, Defendant–Appellant.**

**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Frank CITRO, Defendant–Appellant.**

**Nos. 86–5037, 86–5038 and 86–5043.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 7, 1989 (Nos. 86–5037 and 86–5038).

Submitted March 7, 1989 * (No. 86–5043).

Decided June 15, 1989.

---

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth

Circuit Rule 34–4 and Fed.R.App.P. 34(a).

Richard G. Sherman, Santa Monica, Cal., Yolanda Barrera, Chief Federal Public Defender, Phillip A. Trevino, Deputy Federal Public Defender, and David R. Evans, Los Angeles, Cal., for defendants-appellants.

Louis M. Fisher, Appellate Section, Crim. Div., Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before SNEED, FARRIS and PREGERSON, Circuit Judges.

SNEED, Circuit Judge:

Spillone, Abel, and Citro appeal their convictions for racketeering, extortionate extension of credit, and using extortionate means to collect extensions of credit. We affirm.

## I.

### FACTS AND PROCEEDINGS BELOW

These appeals arise from a twenty-two count indictment charging eight defendants with operating a loan sharking enterprise.

Because none of the defendants challenges the sufficiency of the evidence, the facts will be recounted only briefly.

Defendants conducted a loan sharking business out of a licensed poker club in Bell, California. Spillone was the alleged leader of the group. Citro made loans and also collected payments. Abel also collected loan payments. The proceeds were turned over to Spillone who returned a percentage of the amount collected to each man. The group charged rates of five or ten percent interest per week.

Appellants and four others were charged with conducting an enterprise through a pattern of racketeering activity and conspiracy to conduct such an enterprise. *See* 18 U.S.C. § 1962(c)–(d) (1982). Spillone was also charged with two counts of making extortionate extensions of credit and one count of using extortionate means to collect extensions of credit. *See* 18 U.S.C. §§ 892, 894 (1982). He was convicted on all counts and sentenced to serve ten years and pay a $20,000 fine. In addition to the conspiracy count, Abel was charged with four counts of making extortionate extensions of credit and seven counts of using extortionate means to collect extensions of credit. He was acquitted of the RICO conspiracy count and one count of making an extortionate extension of credit; he was convicted of all other counts. He was sentenced to serve five years. Citro was charged with six counts of making extortionate extensions of credit and five counts of using extortionate means to collect extensions of credit. He was also acquitted of the RICO conspiracy count and one count each of making an extortionate extension of credit and using extortionate means to collect an extension of credit. He was sentenced to serve two years.

## II.

## JURISDICTION

The district court had jurisdiction under 18 U.S.C. § 3231 (1982). This court's jurisdiction rests on 28 U.S.C. § 1291 (1982).

## III.

## SPILLONE'S APPEAL

### A. *Electronic Surveillance Orders*

This court reviews de novo whether a wiretap order complies with 18 U.S.C. § 2518 (1982 & Supp. V 1987). *See United States v. Brone*, 792 F.2d 1504, 1506 (9th Cir.1986).

Spillone argues that the wiretap orders issued in this case did not comply with § 2518(4)(c) (1982) which requires that the order include "a statement of the particular offense to which [the order] relates." Three wiretap orders were issued in this case. Spillone objects to the portion of each order that provides: "The interceptions sought herein [are for investigations] ... concerning the offenses enumerated in Section 2516 of Title 18, U.S.C." Section 2516 lists virtually every serious crime in the United States Code. *See* 18 U.S.C. § 2516 (1982 & Supp. V 1987).

We must look to the entire order to determine if it complies with the statute. *See United States v. Kalustian*, 529 F.2d 585, 589 (9th Cir.1975). We have never required wiretap orders to specify the particular crimes involved in exact detail. For example, in *United States v. Licavoli*, 604 F.2d 613, 620 (9th Cir.1979), *cert. denied*, 446 U.S. 935, 100 S.Ct. 2151, 64 L.Ed.2d 787 (1980), the court considered an order authorizing interception of conversations concerning "receiving, concealing, ... selling or disposing of goods ... knowing the same to be stolen ... in violation of Title 18, U.S.C., Section 2315." The defendant objected because the order did not limit the interception to conversations concerning stolen diamonds. The court held that the order complied with the statute. *Id.* In *United States v. Turner*, 528 F.2d 143, 153–55 (9th Cir.), *cert. denied*, 423 U.S. 996, 96 S.Ct. 426, 46 L.Ed.2d 371 (1975), this court held that an order which identified conversations concerning "narcotics" was sufficient to satisfy the statute. *See also United States v. Carneiro*, 861 F.2d 1171, 1179 (9th Cir.1988) (holding that wiretap order complied with statute when it specified the particular statutes being in-

vestigated and stated that the defendant was being investigated for distributing controlled substances).

■ In this case, the order was similar to the order approved in *Licavoli* and much more specific than the one approved in *Turner.* Spillone ignores that paragraph A of the order listed the particular offenses which were being investigated and which included violations of the Hobbs Act, 18 U.S.C. § 1951 (1982), interstate travel in aid of extortion, 18 U.S.C. § 1952 (1982), extortionate credit transactions, 18 U.S.C. §§ 892–894 (1982), conspiracies to commit those offenses, 18 U.S.C. § 371 (1982), and a RICO violation, 18 U.S.C. § 1962 (1982). In addition, the May 12, 1981 order provided that "these wire and oral communications will concern racketeering activities involving extortion and murder...." The two later wiretap orders followed the same format. The wiretap orders complied with the statute.

In addition to violating the statute, Spillone also argues that by failing to specify the offense, the wiretap order violated the Fourth Amendment's prohibition against general warrants. In *Berger v. New York,* 388 U.S. 41, 58–59, 87 S.Ct. 1873, 1883, 18 L.Ed.2d 1040 (1967), the Court struck down a New York statute authorizing wiretaps, in part, because the statute did not require the court to specify the particular offense being investigated. This argument has no merit. By specifying the specific crimes being investigated, the warrant satisfied *Berger.*

### B. *Counsel's Closing Argument*

Spillone next complains of the district court's interruption of his counsel's closing argument on seven occasions. The court instructed counsel not to interject his personal opinion into the argument and also prohibited counsel from using anecdotes and making analogies to well-known cases. Spillone has not cited any authority supporting his argument that this was reversible error.

■ "The trial court has broad discretion in controlling closing arguments, and, in the absence of an alleged violation of specific constitutional rights, we will apply an abuse of discretion standard of review." *United States v. Schuler,* 813 F.2d 978, 982 (9th Cir.1987). The trial court has a duty to control final argument and to prevent any improper arguments. *See United States v. Young,* 470 U.S. 1, 9–10, 105 S.Ct. 1038, 1043, 84 L.Ed.2d 1 (1985). The trial court did not abuse its discretion in requiring counsel to confine his remarks to the record and in prohibiting counsel from making references to other cases.

### C. *Admission of Prior Conviction*

Next, Spillone objects to the admission of a prior conviction. In 1971 Spillone was convicted of making an extortionate extension of credit and sentenced to twelve years confinement. He was released on parole in 1976 and discharged in 1981. Prosecutors urged admission of Spillone's prior conviction on the grounds that it showed intent and knowledge. The district court agreed, despite Spillone's representations that he would not argue intent. Spillone suggested that he would contend that the government's witnesses were fabricating their testimony. The district court gave a limiting instruction and then permitted the prosecutor to tell the jury that Spillone was convicted of extortionate extension of credit in 1971.

We review the trial court's decision to admit evidence of prior criminal acts under Fed.R.Evid. 404(b) for abuse of discretion. *United States v. Johnson,* 820 F.2d 1065, 1070 (9th Cir.1987).

■ We use a four-part test to determine whether evidence is admissible under rule 404(b). *See United States v. Miller,* 874 F.2d 1255, 1268 (9th Cir.1989). The government has the burden of proving that the evidence satisfied this test. *See United States v. Alfonso,* 759 F.2d 728, 739 (9th Cir.1985). First, there must be sufficient evidence to support the jury's finding that the defendant committed the other crime. *Miller,* 874 F.2d at 1268–69.[1] Spillone con-

---

1. Prior Ninth Circuit cases required clear and convincing evidence of the prior act. *See, e.g.,*

cedes that this is so. Second, the other crime must not be too remote. Spillone vigorously argues that the prior conviction was too remote because it was over ten years old.

Courts have seldom discussed the proper way to evaluate a defendant's objection that a prior bad act or conviction is too remote. The Seventh Circuit has suggested that remoteness must be considered in conjunction with other factors. "Questions about 'how long is too long' do not have uniform answers; the answers depend on the theory that makes the evidence admissible." *United States v. Beasley*, 809 F.2d 1273, 1277 (7th Cir.1987). We agree with the Seventh Circuit and decline to adopt an inflexible rule excluding evidence of prior bad acts after a certain amount of time elapses. Depending upon the theory of admissibility and the similarity of the acts, for example, some remote acts may be extremely probative and relevant. We note that other circuits have permitted the introduction of similar acts that are ten years old or older. *See, e.g., United States v. DeCastris*, 798 F.2d 261, 265 (7th Cir. 1986) (prior bad acts as old as ten years admissible to show a pattern); *United States v. Rubio–Gonzalez*, 674 F.2d 1067, 1075 (5th Cir.1982) (one prior bad act occurring over ten years before admissible to prove knowledge); *United States v. Engleman*, 648 F.2d 473, 478–79 (8th Cir.1981) (evidence of murder committed thirteen years ago admissible); *United States v. Lea*, 618 F.2d 426, 431 (7th Cir.) (prior similar scheme, occurring over ten years before, admissible to show intent and motive), *cert. denied*, 449 U.S. 823, 101 S.Ct. 82, 66 L.Ed.2d 25 (1980). *But see United States v. Davis*, 657 F.2d 637, 639–40 (4th Cir.1981) (error to admit evidence that six to eleven years before, defendant sold heroin to children but error harmless in light of other evidence). Given the fairly close similarity of the offenses, *see infra*, Spillone's prior conviction was not so remote as to require its exclusion.

Similarity of the offenses is the third factor the trial court must consider. To be admissible under rule 404(b), the prior conduct need not always be similar, depending upon the theory of admissibility. *See Miller*, 874 F.2d at 1268–69. When a prior act is admitted to prove intent, as here, the prior act must be similar. *Id.* at 1269. Spillone argues that there was no evidence that the two offenses have the required similarity.

As already indicated, we do not accept this position. Spillone's prior conviction was for making an extortionate extension of credit. *See* 18 U.S.C. § 892. In this case, he was charged with violating § 892 and the related § 894, which prohibits using extortionate means to collect extensions of credit. This court has upheld the admission of prior crimes, not only when the offenses charged were identical, as in *United States v. Winn*, 767 F.2d 527, 529 (9th Cir.1985) (per curiam) (defendant's prior conviction for aiding and abetting the transportation of illegal aliens was admissible in the defendant's trial for the same offense), but also when the prior conviction was for a similar offense. Thus, a prior conviction for making false statements and for mail and securities fraud was admissible in a defendant's trial for mail fraud and embezzlement. *See United States v. Evans*, 796 F.2d 264, 265 (9th Cir.1986) (per curiam). We relied on the fact that the intent element was similar in each charge. *See id.* We hold that the third requirement was satisfied.

The last of the four requirements is that the prior act must be introduced in order to prove a material element of the case. Spillone acknowledges that the government stated that the prior conviction was admissible to prove intent and knowledge, but complains that this was insufficient. To satisfy this requirement, Spillone argues that the government had to articulate the precise evidentiary hypothesis, an essential part of which would be supplied by the prior conviction, to warrant the admission of the evidence. This court has not im-

---

*Alfonso*, 759 F.2d at 738. The Supreme Court rejected this standard in *Huddleston v. United States*, 485 U.S. 681, 108 S.Ct. 1496, 1499, 99

L.Ed.2d 771 (1988). Consequently, we have altered our four-part test to conform with *Huddleston. See Miller*, 874 F.2d at 1269–70.

posed such a strict requirement. *See United States v. Mehrmanesh*, 689 F.2d 822, 831 (9th Cir.1982).

Intent was a material element of this case. Frequently, evidence of intent is circumstantial and less strong than it might be. Under these circumstances, courts permit the introduction of prior crimes. *See United States v. Harrod*, 856 F.2d 996, 1001 (7th Cir.1988); *United States v. Scott*, 767 F.2d 1308, 1311 (9th Cir.1985). These authorities justify our holding that the fourth requirement was satisfied.

Finally, after considering all these factors, the district court must weigh the probative force of the evidence against its prejudicial effect. *See Miller*, 874 F.2d at 1268. We do not disagree with the trial court's conclusion that the probative force was sufficient to overcome the prejudice to the defendant. The court prudently gave a limiting instruction in order to minimize the prejudicial effect. Spillone simply asserts that his prior conviction has no "logical connection" to any crime being charged. Spillone overlooks that the crucial issues in cases involving § 892 and § 894 are the debtor's knowledge that failure to repay the loan will result in harm to him and the defendant's knowing use of extortionate means to collect the loans, respectively. A defendant's prior conviction under § 892 has a clear logical connection to the issue of his knowledge and intent in this case. The district court did not abuse its discretion in admitting this evidence.

### D. *Prosecutorial Misconduct*

We now turn to the more troublesome issues raised by Spillone. Spillone makes numerous allegations of prosecutorial misconduct that he argues warrants dismissal of the indictment.

**2.** The case first suggesting de novo review was *De Rosa. De Rosa*, in turn, relied upon a footnote in *United States v. Sears, Roebuck & Co.*, 719 F.2d 1386 (9th Cir.1983). The court observed that it would review the district court's "legal conclusions that Sears' Fifth Amendment rights were violated" de novo. *Id.* at 1392 n. 9. This statement is, of course, correct. *See United*

### 1. Standard of Review

The proper standard for reviewing the district court's refusal to dismiss an indictment for prosecutorial misconduct is not clear. There exist two distinct lines of authority, one suggesting de novo, the other abuse of discretion, review. *Compare United States v. Benjamin*, 852 F.2d 413, 415 (9th Cir.1988) (de novo review) *and United States v. De Rosa*, 783 F.2d 1401, 1404 (9th Cir.) (same), *cert. denied*, 477 U.S. 908, 106 S.Ct. 3282, 91 L.Ed.2d 571 (1986) *with United States v. Gonzalez*, 800 F.2d 895, 899 (9th Cir.1986) (abuse of discretion standard of review) *and United States v. Noti*, 731 F.2d 610, 613 (9th Cir. 1984) (same).[2]

We hold the de novo standard is the appropriate one. This is because the issue presents a mixed question of both law and fact. First, the trial court must determine whether the defendant's allegations of misconduct are true—a purely factual inquiry. Next, it must determine whether the prosecutor's conduct violated the Constitution or whether the misconduct was so serious that dismissal is warranted. This latter inquiry is a question of law. In *United States v. McConney*, 728 F.2d 1195 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984), we discussed the proper standard of review for mixed questions at great length and concluded that in most instances mixed questions of law and fact should be reviewed de novo. *See id.* at 1202–03. The court noted, however, that de novo review is inappropriate (1) for deciding whether "established facts constitute negligence," and (2) for deciding questions "in which the applicable legal standard provides for a strictly factual test." *Id.* at 1204. Neither exception is applicable here; therefore, we shall employ a de novo standard of review.

*States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). However, it is not clear that the court in *De Rosa* correctly interpreted this statement to mandate de novo review of the district court's refusal to dismiss the indictment.

### 2. United States v. Mechanik

The government argues that any prosecutorial misconduct became harmless after Spillone's conviction, citing *United States v. Mechanik*, 475 U.S. 66, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986). Mechanik appealed his conviction, arguing that the district court erred in denying his motion to dismiss the indictment. He argued that the government violated Fed.R.Crim.P. 6(d) by allowing two witnesses to testify simultaneously before the grand jury. The Supreme Court held that any error became harmless when the defendant was convicted by a jury. Rule 6(d), the Court reasoned, was designed to insure that there is probable cause to indict, but the petit jury's verdict had demonstrated that probable cause existed. *Id.* at 70, 106 S.Ct. at 941. Further, the Court reasoned that the

> societal costs of reversal and retrial are an acceptable and often necessary consequence when an error in the first proceeding has deprived a defendant of a fair determination of the issue of guilt or innocence. But the balance of interest tips decidedly the other way when an error has no effect on the outcome of the trial.

*Id.* at 72, 106 S.Ct. at 943.

Since *Mechanik* the federal courts of appeal have struggled to define what non-trial errors remain reviewable after a defendant has been convicted. For a brief period there burned brightly the prospect of utilizing interlocutory appeals to vindicate claims that arguably would be barred from post-conviction review by *Mechanik*. *See United States v. Benjamin*, 812 F.2d 548, 550–54 (9th Cir.1987). This prospect was extinguished by *Midland Asphalt Corp. v. United States*, — U.S. —, 109 S.Ct. 1494, 1498, 103 L.Ed.2d 879 (1989). Interlocutory appeals in criminal proceedings were severely limited.

While *Mechanik* and *Midland Asphalt* considered together seem clear enough,

this clarity is diminished when *Bank of Nova Scotia v. United States*, — U.S. —, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988), is added to the mix. Uncertainty arises because *Bank of Nova Scotia* can be read as requiring appellate courts in reviewing convictions to assess claims of prosecutorial misconduct in the grand jury proceedings by the standard Justice O'Connor employed in her concurring opinion in *Mechanik*. That is, "dismissal of the indictment is appropriate only 'if it is established that the violation substantially influenced the grand jury's decision to indict' or if there is 'grave doubt' that the decision to indict was free from substantial influence of such violations." *Bank of Nova Scotia*, 108 S.Ct. at 2374 (quoting *Mechanik*, 475 U.S. at 78, 106 S.Ct. at 945 (O'Connor, J., concurring)). This standard, however, was explicitly rejected by *Mechanik*. *See* 475 U.S. at 71, 73, 106 S.Ct. at 942, 943.

It is, of course, possible to read *Bank of Nova Scotia* as applicable only to situations in which prosecutorial abuse of grand jury proceedings serves as the basis of a request to a trial court "to dismiss an indictment prior to the conclusion of the trial." 108 S.Ct. at 2374. Under these circumstances, the standards employed by Justice O'Connor become the heart of the harmless error rule, the relevant content of Fed.R.Crim.P. 52(a). An appellate court, however, reasonably could review the trial court's decision after conviction *only* by using, to some degree in any event, the same standard. Thus, once more *Bank of Nova Scotia* brushes against *Mechanik*.

Despite our uncertainty, we shall apply Justice O'Connor's standard in evaluating prosecutorial misconduct allegations as they relate to violations of the rules governing grand jury proceedings as well as the standard of fundamental fairness that we employed in *United States v. Howard*, 867 F.2d 548, 551–52 (9th Cir.1989).[3] While this standard may not be identical to the

---

**3.** In *Howard*, 867 F.2d at 551–52, we held that after conviction, a defendant could no longer challenge any errors associated with the grand jury charging process but remained free to raise objections to the fundamental fairness of the grand jury proceedings. *See also United States*

*v. Eccles*, 850 F.2d 1357, 1364 (9th Cir.1988) ("[P]ost-conviction review remains available under *Mechanik* ... where the defendant has alleged prosecutorial misconduct that does implicate substantial rights protected by the due process clause.").

"fundamental" fairness standard that the Court in *Bank of Nova Scotia* recognized as justifying a presumption of prejudice, *see* 108 S.Ct. at 2375, its resemblance is close enough to warrant its continued use by this court.[4]

We now turn to Spillone's allegations to determine which should be governed by *Mechanik* and which, if any, might implicate either Justice O'Connor's standards, the fundamental fairness of the grand jury proceeding standard, or the ordinary harmless error standard.

### 3. Delay in Producing Exculpatory Evidence

Spillone's first allegation does not pertain to the grand jury proceedings. He alleges that exculpatory testimony appearing in the grand jury transcripts of witnesses Creditor and Spalliero was withheld from defense counsel in violation of the court's discovery orders and *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed. 2d 215 (1963). Spillone concedes that after an *in camera* inspection, the district court ordered the transcripts released several months before trial. The district court found that prosecutors did not deliberately misrepresent the existence of this exculpatory evidence. Spillone has not suggested that he has suffered any prejudice as a result of the delay.

■ To ask for a dismissal of the indictment on this ground is unwarranted. In essence, Spillone is asking this court to dismiss the indictment as a sanction against the government for failing to comply with its duty to disclose exculpatory evidence. While a district court has broad discretion to fashion remedies for the violation of its discovery orders, that discretion

in this case was properly exercised by refusing to dismiss the indictment. The exculpatory evidence was disclosed months before trial. Any prejudice was not sufficient to warrant dismissal of the indictment in any event.

### 4. Superseding Indictment

■ Spillone next complains of the manner in which the government obtained the superseding indictment. The superseding indictment, according to the government, "corrected" some of the dates in the first indictment. FBI Agent Wiechert was the only witness to appear before the grand jury that issued the second indictment. Wiechert testified that certain witnesses were "confused" about their recollection of certain dates. The district court held that there was no misconduct because the grand jury was told it could recall any witness and because the government provided transcripts of the witness' testimony to it. The government argues that any error was harmless under *Mechanik*. We agree.

■ The issue of whether Wiechert's testimony was correct or incorrect has been affirmatively answered by the petit jury's verdict. In a similar situation, the Eighth Circuit held that such an impropriety was made harmless by the defendant's conviction. *See United States v. Kouba*, 822 F.2d 768, 773–74 (8th Cir.1987); *see also United States v. Hintzman*, 806 F.2d 840, 843 (8th Cir.1986) (holding that any error by prosecutor and government witness in misleading grand jury was harmless under *Mechanik*).

Furthermore, we are confident that recourse to Justice O'Connor's standard adopted by *Bank of Nova Scotia* or to this

**4.** Other courts have responded in a similar fashion. *See, e.g., United States v. Friedman*, 854 F.2d 535, 583 (2d Cir.1988) (distinguishing between violations like those in *Mechanik* and misconduct that "'deprive[s] [the] defendant of a fair determination of his guilt or innocence,'" *quoting Mechanik*, 475 U.S. at 72, 106 S.Ct. at 942) *cert. denied,* — U.S. —, 109 S.Ct. 1637, 104 L.Ed.2d 153 (1989); *United States v. Hooker*, 841 F.2d 1225, 1231 (4th Cir.1988) (en banc) (error not harmless when it affects "substantial rights"); *United States v. Giorgi*, 840 F.2d 1022, 1030 (1st Cir.1988) (distinguishing between "technical violations" and "claims of fundamental fairness"); *United States v. Taylor*, 798 F.2d 1337, 1340 (10th Cir.1986) (stating that claims implicating the "fundamental fairness" of the criminal proceeding would remain reviewable despite *Mechanik*). *But see United States v. Fountain*, 840 F.2d 509, 515 (7th Cir.) (rejecting any distinction between technical violations and more serious errors), *cert. denied,* — U.S. —, 109 S.Ct. 533, 102 L.Ed.2d 564 (1988).

court's standard employed in *Howard* would not alter this result.

### 5. Angelo's Testimony

Spillone's third set of allegations concerns the testimony of government informant Johnny Angelo. Spillone challenges the government's use of Angelo's testimony both before the grand jury and to obtain the wiretap orders. Spillone claims that the government improperly failed to reveal Angelo's long criminal record to the grand jury and failed to reveal that he received a reduced sentence on another charge in exchange for his testimony. He also suggests that Angelo perjured himself before the grand jury when he testified that he was not a paid government informant when he was working with Spillone and became a government informant only after he learned that Spillone had hired someone to kill him. Spillone argues that the perjury was compounded by FBI Agent Wiechert who also testified that Angelo was not an informant during his dealings with Spillone. Spillone also alleges that the government agents concealed efforts taken on Angelo's behalf to secure good time credit for him in California state court and that the grand jury was not informed that the FBI and DEA had terminated Angelo as an informant because he was untrustworthy and unreliable. Finally, as in the case of the exculpatory transcripts of Creditor and Spalliero, the government failed to reveal exculpatory statements made by Angelo until the district court ordered the information released after an *in camera* inspection. Angelo never testified at trial.

The district court held two hearings on these allegations. The district court examined the transcript of the hearing in state court concerning Angelo's good time credit. The court concluded that the government had no obligation to present matters bearing on Angelo's credibility to the grand jury. The court also held that the revelations about Angelo and Wiechert's reliance on his assertions did not require an evidentiary hearing on the sufficiency of the affidavits supporting the wiretap orders. *See Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667 (1978).

Another hearing was held after Spillone was convicted. Angelo, who had left the witness protection program, submitted an affidavit in which he claimed that he did not make certain statements attributed to him by Agent Wiechert in the wiretap affidavit. He also claimed that FBI agents instructed him to lie to the grand jury. Later Angelo wrote the district court and said that his affidavit was false. He testified at the hearing but at first invoked his Fifth Amendment privilege. After reconsidering, he did testify. He took issue with some of statements attributed to him in the wiretap affidavit but said that he testified truthfully before the grand jury. After this testimony, the district court denied Spillone's renewed motion to dismiss the indictment and again refused to hold a *Franks* hearing. The district court specifically found that Angelo was not a credible witness.

■ Spillone does not contest the district court's failure to hold a *Franks* evidentiary hearing. Thus, he has waived any complaint concerning the wiretap affidavit.

Angelo never testified at trial and when the government realized that he would not appear as a witness at trial, the government struck two of the overt acts in the indictment. Nonetheless, Spillone was convicted by the petit jury. There was sufficient evidence, aside from Angelo's testimony, to support the conviction. This indicates that any error in presenting the case to the grand jury should be considered harmless under *Mechanik*.

■ The result is no different when Justice O'Connor's *Bank of Nova Scotia* standard is employed or our *Howard* standard is used. In the first place, some of these allegations regarding Angelo's role are not examples of prosecutorial misconduct. A prosecutor has no duty to present evidence bearing on witness credibility to the grand jury. *See, e.g., United States v. Busher*, 817 F.2d 1409, 1411 (9th Cir.1987). Thus, there is no error in the government's failure to tell the grand jury that Angelo had an extensive criminal record or that he had been terminated as an informant by the

FBI and DEA. Similarly, the government's failure to disclose efforts undertaken to insure that Angelo received good time credit for his testimony need not be presented to the grand jury because it also bears on his credibility.

The government's delay in producing the exculpatory portions of Angelo's grand jury testimony also is not grounds for dismissal of the indictment. As in the case of the transcripts of Creditor and Spalliero, the defendants received this information well before trial and therefore the district court did not err in refusing to dismiss the indictment. *See supra* at 522.

Spillone's allegations that Angelo perjured himself before the grand jury in testifying about when he became a government informant require resort to Justice O'Connor's standard, as developed in *Bank of Nova Scotia,* and our *Howard* standard. This is particularly true because Agent Wiechert's testimony confirmed Angelo's incorrect version of the facts. *See United States v. Basurto,* 497 F.2d 781, 785–86 (9th Cir.1974) (prosecutor's knowing use of perjured testimony to the grand jury violated the Fifth Amendment's guarantee of due process). Thus, we decline to invoke *Mechanik* solely.

■ Nonetheless, we hold that the alleged perjury did not "substantially influence the grand jury's decision to indict" nor conflict with the "fundamental fairness" standard of *Howard.* We commence with the proposition that dismissal of the indictment is not warranted when a witness' alleged perjury is not material to the defendant's indictment and instead affects only the witness' credibility. *See United States v. Flake,* 746 F.2d 535, 539 (9th Cir.1984), *cert. denied,* 469 U.S. 1225, 105 S.Ct. 1220, 84 L.Ed.2d 360 (1985); *see also United States v. Levine,* 700 F.2d 1176, 1180 (8th Cir.1983) (false testimony must be material to warrant dismissal of the indictment); *United States v. Kennedy,* 564 F.2d 1329, 1338 (9th Cir.1977) (same), *cert. denied,* 435 U.S. 944, 98 S.Ct. 1526, 55 L.Ed.2d 541 (1978). Angelo's perjury related to his assertions that he did not become a government informant until after his dealings with Spillone. This clearly affects only Angelo's credibility. Thus, the district court properly refused to dismiss the indictment.

Nor does Agent Wiechert's confirmation of this erroneous testimony warrant dismissal of the indictment. Not all erroneous statements of government agents warrant dismissal of the indictment. *See, e.g., United States v. Gonzalez,* 800 F.2d 895, 899 (9th Cir.1986); *United States v. Seifert,* 648 F.2d 557, 564 (9th Cir.1980). This evidence was not sufficiently material to justify holding that it substantially influenced the grand jury's decision to indict. Nor does Angelo's and Wiechert's failure to identify the correct point at which Angelo became a government informant enable us to say that the indictment should be set aside to serve the ends of fundamental fairness.

## 6. Minster's Testimony

The final allegations of government misconduct concern government witness Irving Minster. Minster perjured himself before the grand jury by denying that he was a loan shark at the Bell Club before the defendants took over all loan sharking activity. Spillone alleges that the government knew of this perjury because it had sought a search warrant for Minster's home in order to recover evidence of loan sharking. The search warrant was under seal. FBI Agent Wiechert, who directed that the search warrant be prepared, testified that he had "forgotten" about the search warrant and, as a consequence, the prosecutors were caused to not reveal this exculpatory information to the defendants.

At trial, Minster once more denied making any loans. The FBI's evidence contradicted this assertion. Agent Wiechert testified that conversations recorded by the FBI indicated that Minster was a loan shark. The district court at this point directed the government to produce the search warrant and affidavit. The court released it to the defendants but again refused to dismiss the indictment. Although the court doubted Wiechert's claim of memory loss, the court specifically

found that prosecutors did not withhold this evidence. Wiechert testified that he told the prosecutor that the Minster search warrant involved a "collateral matter." The court also found that the defendants had sufficient time to use the evidence to impeach Minster and that the *Brady* violation did not warrant dismissal of the indictment. The court further refused to dismiss the indictment based on the grand jury testimony because the court found there was sufficient evidence to support the indictment without Minster's testimony.

■ The government argues that any misconduct was harmless. Construing the term "harmless" as defined in *Bank of Nova Scotia,* we agree. The actions of the government and Minster's perjury did not substantially influence the decision to indict. The district court also specifically found that the prosecutors were not aware of Minster's perjury. *See United States v. Cady,* 567 F.2d 771, 776 (8th Cir.1977) (dismissal of indictment is not warranted in absence of evidence of "gross purposeful deception by the prosecutor"), *cert. denied,* 435 U.S. 944, 98 S.Ct. 1526, 55 L.Ed.2d 541 (1978). The district court did not act contrary to fundamental fairness in refusing to dismiss the indictment.

Finally, the government's delay in producing the search warrant does not require dismissal of the indictment. *Brady* was not violated under the circumstances of this case. *See United States v. Browne,* 829 F.2d 760, 765 (9th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 1298, 99 L.Ed.2d 508 (1988).

### 7. Cumulative Effect

Spillone next resorts to the cumulative effect argument. He contends that while any one of these instances of prosecutorial misconduct may not be sufficient to warrant dismissal of the indictment, their cumulative effect is sufficient. *See United States v. Samango,* 607 F.2d 877, 884 (9th Cir.1979).

■ We disagree. Assuming those facts most favorable to Spillone, he has demonstrated that Angelo and Minster misled the grand jury about their own activi-

ties and Agent Wiechert failed to identify correctly when Angelo became a government agent. The testimony of neither witness related to the specific allegations against Spillone. We cannot conclude either that the cumulative effect of this misconduct substantially influenced the grand jury's decision to indict Spillone or that it imparted to the grand jury proceedings an aura of fundamental unfairness.

## IV.

## ABEL AND CITRO'S CHALLENGE TO THE JURY INSTRUCTIONS

Abel challenges the trial court's refusal to include three jury instructions, and Citro complains of the district court's refusal to include two instructions.

Our standard of review generally is abuse of discretion. *United States v. Echeverry,* 759 F.2d 1451, 1455 (9th Cir. 1985). Jury instructions are considered as a whole to determine if they are misleading or inadequate. *United States v. Burgess,* 791 F.2d 676, 680 (9th Cir.1986). However, whether a jury instruction misstated elements of a statutory crime is a question of law and is reviewed de novo. *United States v. Douglass,* 780 F.2d 1472, 1475 (9th Cir.1986).

### A. *The 18 U.S.C. § 892 Counts*

Citro and Abel raise two objections to the trial court's instructions on the extortionate extensions of credit counts.

First, Citro contends that the district court erred in failing to instruct the jury that it was required to find that the victim feared the defendants and that their fear was reasonable under the circumstances.

■ Section 892(a) prohibits anyone from making extortionate extensions of credit. "An extortionate extension of credit is any extension of credit with respect to which it is the *understanding* of the creditor and the debtor at the time it is made that delay in making repayment or failure to make repayment could result in the use of violence...." 18 U.S.C. § 891(6) (1982) (emphasis added). The crucial element of

the statute is the *understanding* of the debtor and the defendant creditor. The statute, by its terms, does not require proof that the victim, aware of the possibility of violence being employed to collect, in fact, feared the defendant. *See United States v. Dennis*, 625 F.2d 782, 803 (8th Cir.1980); *see also* Goldstock & Cohen, *Controlling the Contemporary Loanshark: The Law of Illicit Lending and the Problem of Witness Fear*, 65 Cornell L.Rev. 127, 172 (1980) ("The important element is thus not fear, but only an awareness that the transaction was backed by implicit threats of violence."). Although proof of the victim's fear certainly would constitute probative evidence of an understanding by the debtor that the threat of violence existed, such proof is not required. It is the mutual understanding of the parties to the transaction that failure to repay could lead to violence, not fear of the violence, that the statute requires. *See, e.g., United States v. Curcio*, 712 F.2d 1532, 1544 (2d Cir.1983); *United States v. Benedetto*, 558 F.2d 171, 177 (3d Cir.1977); *United States v. Nakaladski*, 481 F.2d 289, 297 (5th Cir.), *cert. denied*, 414 U.S. 1064, 94 S.Ct. 570, 38 L.Ed.2d 469 (1973). The district court did not err in refusing to include Citro's proposed jury instructions.

▪ Abel's argument, that § 892(b)(3) *requires* proof of the debtor's understanding that the threat of violence exists be reasonable, fares no better. This argument is contradicted by the language of the statute. Section 892(a) defines the offense. Section 892(b), on the other hand, lists four factors which, if proved, constitute a prima facie case. Abel's contention that the debtor's understanding must be reasonable is derived from the third part of § 892(b) which provides: "At the time the extension of credit was made the debtor *reasonably* believed that either (A) one or more extensions of credit ... had been collected or attempted to be collected by extortionate means ...; or (B) the creditor had a reputation for the use of extortionate means to collect extensions of credit...." 18 U.S.C. § 892(b)(3) (emphasis added). The statute explicitly states that this method of proof is *not* exclusive and does not limit the more

general language of § 892(a). *See* 18 U.S.C. § 892(b). Thus, Abel is incorrect in asserting that § 892(a) requires proof that the debtor's understanding be reasonable.

## B. The 18 U.S.C. § 894 Count

Section 894 prohibits the knowing use of "any extortionate means" to collect an extension of credit. 18 U.S.C. § 894(a). "Extortionate means" is defined as "any means which involves the use, or an express or implicit threat of use, of violence or other criminal means to cause harm to the person, reputation, or property of any person." 18 U.S.C. § 891(7) (1982). The court instructed the jury that "[a]cts or statements constitute a threat under law if they are calculated to instill fear in the person to whom they are directed in light of the surrounding circumstances."

Abel argues that because the statute requires a "knowing" use of extortionate means, the statute must also require that the debtor reasonably apprehend that the use of extortionate means of collection is contemplated. In this way Abel seeks to shift the focus of the statute from the creditor to the debtor.

▪ In *United States v. Polizzi*, 801 F.2d 1543 (9th Cir.1986), we rejected a similar effort. Polizzi argued that the district court erred in refusing to instruct the jury that, in order to find the defendants guilty, the evidence had to show that "an ordinary person would have been put in fear of immediate bodily or economic harm...." *Id.* at 1547. The court held that the instruction was not required because the focus of § 894 was the *defendant's* knowing use of extortionate means to collect extensions of credit, not the consequent fear of the debtor. 801 F.2d at 1548; *see United States v. Sears*, 544 F.2d 585, 588 (2d Cir. 1976). The gravamen of a § 894 offense is the defendant's state of mind, not that of the victim debtor. *See, e.g., United States v. Natale*, 526 F.2d 1160, 1168 (2d Cir. 1975), *cert. denied*, 425 U.S. 950, 96 S.Ct. 1724, 48 L.Ed.2d 193 (1976); *Nakaladski*, 481 F.2d at 298; *United States v. DeStafano*, 429 F.2d 344, 347 (2d Cir.1970), *cert.*

*denied,* 402 U.S. 972, 91 S.Ct. 1656, 29 L.Ed.2d 136 (1971). Thus, there was no error in refusing to include Abel's proposed instruction.

Citro's arguments to a degree are the converse of Abel's. He contends that the trial court should have given his proposed instruction which stated that "[f]ear must be the knowing and intentional result of the defendant's act." While he admits that the trial court properly instructed the jury on the elements of the statute, he contends that the government improperly emphasized the fear created in the victim whereas the focus of § 894 is on the defendant's intent to create fear.

The trial court's instructions did make clear that § 894 requires that the defendant intend to instill fear in the victim. The trial court instructed the jury that "[a]cts or statements constitute a threat under law if they are calculated to instill fear in the person to whom they are directed...." It also instructed the jury that it must find that "the defendant expressly or implicitly threatened the use of violence or other criminal means to cause harm...." Finally, the court instructed the jury that the "existence of actual fear in the mind of the debtor" was not an element of the crime. These instructions thoroughly explained the elements of § 894. They foreclosed the possibility that proof of a frightened debtor, cowed by a creditor's scowls, alone is sufficient to justify a conviction under § 894.

### C. *The 18 U.S.C. § 1962(c) Count*

Finally, Abel argues that if this court finds that the court's instructions were inadequate, his RICO conviction must also be reversed. Because we conclude that the instructions were adequate, we need not reach this contention.

### V.

### CITRO'S APPEAL

#### A. *Claire Ellis' testimony*

Citro complains of the trial court's refusal to strike a portion of Claire Ellis' testimony. Claire Ellis testified that she received two loans from Citro. She requested a third but Citro refused, telling her that people who did not repay their loans "get taken care of." She testified that this statement frightened her. Later, Citro, in a "demanding" voice, told Ellis that he would like her to follow him home. She testified that although she tried to put him off, she went to Citro's home. The prosecutor then asked what happened next. After a bench conference, the trial court refused to allow Ellis to testify about subsequent events. The court denied a motion for a mistrial and, later, a motion to strike the testimony. Citro, aware of the potentially prejudicial effect of a part of the story, and not being prepared to divulge it all, urges that the entire story be stricken. He claims that this testimony implied that he raped Ellis and therefore its admission violated Fed.R.Evid. 404(b).

We review a trial court's admission of evidence for abuse of discretion. *See United States v. Gwaltney,* 790 F.2d 1378, 1382 (9th Cir.1986), *cert. denied,* 479 U.S. 1104, 107 S.Ct. 1337, 94 L.Ed.2d 187 (1987). The erroneous admission of evidence does not require reversal of the defendant's conviction unless, more probably than not, the error materially affected the jury's verdict. *United States v. Valle–Valdez,* 554 F.2d 911, 915–16 (9th Cir.1977).

We have not found any case in which a court discusses the admission of testimony that *implicitly* suggests that the defendant committed another crime or bad act. Citro cites *United States v. Dunn,* 805 F.2d 1275 (6th Cir.1986), to support his argument. *Dunn,* however, is inapposite. The witness there testified that the defendant, who was charged with mail fraud, was stealing eggs he was supposed to be selling under an exclusive contract. *Id.* at 1277–78. The entire story was admitted; nothing was left to the jury's imagination. Knowledge of wrongdoing is more prejudicial than mere suspicion of it—at least under the circumstances of the case before us.

We conclude that any error in the admission of this evidence was harmless.

There was extensive testimony by the victims of the loan sharking enterprise about borrowing money from Citro, about the various interest rates charged, and about the threats made. Claire Ellis' testimony was only cumulative.

### B. *Definition of "collection"*

Finally, Citro argues that it was plain error for the district court not to define collection as used in the RICO counts. " 'A plain error is a highly prejudicial error affecting substantial rights.' " *United States v. Bustillo*, 789 F.2d 1364, 1367 (9th Cir.1986) (quoting *United States v. Giese*, 597 F.2d 1170, 1199 (9th Cir.), *cert. denied*, 444 U.S. 979, 100 S.Ct. 480, 62 L.Ed.2d 405 (1979)). We reject this contention.

■■■ Citro cites *United States v. Pepe*, 747 F.2d 632 (11th Cir.1984), as support for his position. In *Pepe*, the Eleventh Circuit approved giving a definition of collection as part of the jury instruction under § 894. *Id.* at 674 & n. 77. The district court in this case used the same instruction. Citro apparently complains of the court's failure to repeat the instruction or cross-reference it in the RICO counts. The failure to cross-reference this definition did not prejudice the defendant's "substantial rights."

AFFIRMED.

PREGERSON, Circuit Judge, concurring in part and dissenting in part.

While I concur in part in the majority opinion, I dissent from Part III.D.5 because I believe that Johnny Angelo's perjury— which was compounded by FBI Agent Wiechert's corroborating testimony and the prosecutor's misleading statements to the grand jury—coupled with the government's knowing presentation of an untrustworthy and unreliable witness to the grand jury require dismissal of the indictment against Spillone. I also dissent from Part III.D.7 of the majority opinion because I believe that the cumulative effect of the government's misconduct requires dismissal of Spillone's indictment.

### I. ANGELO'S TESTIMONY

The majority concludes that the prosecutorial misconduct concerning Angelo's testimony before the grand jury was, at best, harmless error which did not warrant dismissal of the indictment against Spillone. I strongly disagree. The government used Angelo as a grand jury witness even though it knew that he was so untrustworthy and unreliable that the DEA and the FBI had terminated him as an informant. The majority states that the government has no duty to disclose information to the grand jury regarding the credibility of witnesses. But for the government to bring a witness before the grand jury in an effort to get an indictment returned against Spillone, knowing all the while that the witness is wholly unreliable, goes beyond nondisclosure of evidence regarding the credibility of witnesses. The government's actions in this regard undermined the fundamental fairness of the grand jury proceedings. *See United States v. Howard*, 867 F.2d 548, 551–52 (9th Cir.1989) (indictment is subject to dismissal when defendant's allegations challenge the fundamental fairness of the criminal proceedings).

In addition, Angelo committed perjury before the grand jury by falsely testifying that he did not become a government informant until after his involvement with Spillone had ceased. In fact, Angelo had been a paid informant throughout his dealings with Spillone. The government not only knew that Angelo's testimony was false and failed to disclose that fact to the grand jury, but FBI Agent Wiechert's testimony compounded Angelo's perjury by confirming Angelo's false version of the facts. The harm caused by Angelo's perjury was further compounded by the prosecutor's statements to the grand jury that implied that Angelo had not been an informant during his involvement with Spillone. The harm was likewise compounded by the prosecutor's statement that the government had not made any deals with Angelo, when the government in fact had paid him a high salary as an informant and had assisted him in obtaining good time credit in his state court convictions.

We have held that due process is violated when a defendant has to stand trial on an indictment that the government knows is based partially on perjured testimony, when the perjured testimony is material, and when jeopardy has not attached. *United States v. Basurto*, 497 F.2d 781, 785 (9th Cir.1974). "Whenever the prosecutor learns of any perjury committed before the grand jury, he is under a duty to immediately inform the court and opposing counsel—and, if the perjury may be material, also the grand jury—in order that appropriate action may be taken." *Id.* at 785–86. We based our decision in *Basurto* "on a long line of cases which recognize the existence of a duty of good faith on the part of the prosecutor with respect to the court, the grand jury, and the defendant." *Id.* at 786.

In the present case, Angelo's perjury went to the heart of his testimony and was amplified by the fact that the perjury was corroborated by a government agent and was implicitly confirmed by the prosecutor. Thus, Angelo's perjury was certainly material in that it cannot be said that the grand jury's decision to indict was not influenced by the perjury and the accompanying misconduct. *See Bank of Nova Scotia v. United States*, —— U.S. ——, 108 S.Ct. 2369, 2374, 101 L.Ed.2d 228 (1988) (indictment must be dismissed if " 'it is established that [prosecutorial misconduct] substantially influenced the grand jury's decision to indict,' or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations") (quoting *United States v. Mechanik*, 475 U.S. 66, 78, 106 S.Ct. 938, 945–46, 89 L.Ed.2d 50 (1986) (O'Connor, J., concurring)).

The grand jury stands as a shield between the government and the accused. When the government, in an effort to secure an indictment, knowingly brings a totally unreliable witness before the grand jury, and when that witness perjures himself and the government corroborates that perjury, the whole judicial process is corrupted. Because, in this case, the grand jury's decision to indict could not help but be substantially influenced by this miscon-

duct, and because the misconduct undermined the fundamental fairness of the grand jury proceedings, Spillone's indictment should have been dismissed. *See Bank of Nova Scotia*, 108 S.Ct. at 2374; *Howard*, 867 F.2d at 551–52.

## II. CUMULATIVE EFFECT

During the grand jury proceedings that led to Spillone's indictment, the government engaged in numerous instances of prosecutorial misconduct. This misconduct included the government's failure to comply with its duty to produce exculpatory evidence until ordered to do so by the district court; the cursory manner in which the government obtained the superseding indictment against Spillone, with FBI Agent Wiechert as the sole witness; the government's misconduct relating to Angelo's testimony, as discussed above; and, finally, grand jury witness Irving Minster's perjury before the grand jury, of which the government was aware yet failed to disclose.

It is true that each of these acts of misconduct (other than the misconduct regarding Angelo's testimony discussed above), standing alone, might not be so severe as to require dismissal of the indictment. However, the cumulative effect of the government's repeated acts of misconduct precludes a finding of harmless error and requires dismissal of the indictment against Spillone. *See United States v. Samango*, 607 F.2d 877, 884 (9th Cir.1979) (cumulative effect of government's "errors and indiscretions, none of which alone might have been enough to tip the scales, operated to the defendants' prejudice by producing a biased grand jury").

The many instances of prosecutorial misconduct in this case robbed the grand jury proceedings of their integrity and, taken together, violated Spillone's due process rights by undermining the fundamental fairness of the proceedings. *Howard*, 867 F.2d at 551–52. In addition, based on the cumulative effect of the various acts of misconduct, it is highly unlikely that the grand jury's decision to indict Spillone was

**530**

free from the substantial influence of that misconduct. *Bank of Nova Scotia*, 108 S.Ct. at 2374.

## III. CONCLUSION

The government's conduct in this case "has placed in jeopardy the integrity of the criminal justice system." *Samango*, 607 F.2d at 884. To allow the indictment against Spillone to stand in these circumstances makes a mockery of the Fifth Amendment's grand jury requirement.