972 F.2d 1339
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Dale M. GUNDERSEN, Petitioner-Appellant,
v.
ANCHORAGE, Municipality of Anchorage; Richard D. Kibby,
Anchorage Municipal Attorney, Respondents-Appellees.
 No. 91-36165.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 20, 1992.
Decided Aug. 28, 1992.
 
 Before HUG, D.W. NELSON and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Appellant Dale M. Gundersen raises two issues in this appeal from the district court's denial of his habeas corpus petition. First, Gundersen argues that the police violated the Due Process Clause of the Fourteenth Amendment by informing him of his state statutory right to obtain an independent blood test, but failing to inform him of his broader statutory rights to obtain any independent sobriety test he desired. Second, Gundersen argues that the jury instructions read at his trial relieved the prosecution of its burden of proving each element of his offense beyond a reasonable doubt. The district court had jurisdiction pursuant to 28 U.S.C. § 2254. We have jurisdiction pursuant to 28 U.S.C. § 2253, and we affirm.
 
 
 3
 Gundersen was arrested for operating a motor vehicle while intoxicated after the vehicle he was driving collided with a parked car and he failed certain field sobriety tests. He was given an Intoximeter 3000 breath analysis test and it registered a reading of .264 grams of alcohol per 210 liters of breath. The legal limit for alcohol content in a driver's breath is .10 grams of alcohol per 210 liters of breath. Alaska Stat. § 28.35.030(a)(2).
 
 
 4
 After the breathalyzer test results were recorded, a police officer read Gundersen a document entitled "Notice of Right to an Independent Test." This document stated:
 
 
 5
 You are ... under arrest for the offense of driving while intoxicated. You have provided a sample of your breath for analysis on the Intoximeter 3000. You also have a right to obtain an independent test of your blood alcohol level. If you wish to have an independent test you will be transferred to a local medical facility where a sample of your blood will be drawn by qualified personnel at no charge to you. The blood sample will be stored at the medical facility for a period of 60 days. It will be your responsibility to make arrangements for analysis of your blood sample. The analysis itself will be done at your own expense. At this time you must decide whether or not you want an independent test performed. A refusal to decide will be taken [as] a waiver of your right to obtain an independent test.
 
 
 6
 Gundersen elected not to take the blood test as described in the notice. The breathalyzer results were subsequently admitted into evidence over Gundersen's objection, and Gundersen was ultimately convicted.
 
 1. Due Process
 
 7
 Gundersen argues in this appeal that the notice of his statutory right to an independent sobriety test was deficient and that this deficiency violated the Due Process Clause of the Fourteenth Amendment. The essence of Gundersen's argument is that federal due process requires the police to fully and accurately inform a defendant of all statutory rights once they take the affirmative step of disclosing any of those statutory rights. We disagree.
 
 
 8
 The Due Process Clause of the Fourteenth Amendment requires that criminal prosecutions comport with prevailing notions of fundamental fairness. California v. Trombetta, 467 U.S. 479, 485 (1984). At the outset we note that Trombetta stands for the proposition that the police are under no affirmative duty to take steps to gather potentially exculpatory evidence on behalf of a defendant. Trombetta, 467 U.S. at 491. However, the facts of Trombetta closely parallel the facts of the instant case, which guides us to the conclusion that the exculpatory value of independent sobriety tests, although not worthless, does not rise to the level of constitutional significance.
 
 
 9
 In Trombetta, the Court evaluated the importance of preserving samples of a defendant's breath so that a defendant could challenge the results of a breathalyzer test. The Court concluded that "the chances are extremely low that preserved samples would [be] exculpatory," and that the policy of not preserving samples did not violate the Constitution. Trombetta, 467 U.S. at 489. Many other methods of challenging the results of a breathalyzer test are available to defendants, which makes the unavailability of breath or blood samples constitutionally acceptable. For example, in Trombetta the Court noted the following available alternatives to introducing independent tests:
 
 
 10
 To protect against faulty calibration, California gives drunken driving defendant the opportunity to inspect the machine used to test their breath as well as that machine's weekly calibration results and the breath samples used in the calibrations.... [A]s to operator error, the defendant retains the right to cross-examine the law enforcement officer who administered the Intoxilyzer test, and to attempt to raise doubts in the mind of the factfinder whether the test was properly administered.
 
 
 11
 Trombetta, 467 U.S. at 490. Although we recognize that in some cases it could prove valuable to a defendant to have an independent analysis of his blood or breath, Trombetta makes clear that the Constitution does not require the availability of these tests. Gundersen concedes this point in his brief.
 
 
 12
 Alaska provides defendants more rights than the constitutional minimum. Gundersen's statutory rights to obtain an independent sobriety test were as follows:
 
 
 13
 The person tested may have a physician, or a qualified technician, chemist, registered nurse or other qualified person of his or her own choosing administer a chemical test in addition to the test administered at the direction of a law enforcement officer.
 
 
 14
 Alaska Stat. § 28.35.033(e). However, at the police station Gundersen was merely informed that he had the right to obtain an independent blood test, and that if he wished to exercise this right he would be transferred to a local medical facility where a sample would be drawn by qualified personnel at no charge.
 
 
 15
 Gundersen argues that the police were required under the Fourteenth Amendment to inform him of the full scope of his statutory rights. Although the police could have remained silent without offending the Constitution, Gundersen claims that by informing him of his right to an independent blood test the police became obligated to inform him of his right to any independent test he chose.
 
 
 16
 We disagree that once Gundersen was informed of his right to an independent blood test, his prosecution became fundamentally unfair because he was not informed that he had the right to any independent sobriety test he desired. If anything, the limited notice provided to Gundersen made his prosecution more fair, which cuts against finding a due process violation. The notice that was read to Gundersen was not constitutionally deficient. The fact that it was limited did not make his prosecution fundamentally unfair.
 
 2. Jury Instructions
 
 17
 Gundersen alleges that the jury instructions read at his trial were constitutionally deficient because they relieved the prosecution of its burden of proving its case beyond a reasonable doubt. Jury instructions are considered as a whole to determine if they are misleading or inadequate. United States v. Spillone, 879 F.2d 514, 525 (9th Cir.1989). Reviewing the instructions read in the instant case in their entirety, we conclude that they did not unconstitutionally shift the burden of proof.
 
 
 18
 At trial, the jury was instructed that the essential elements of Driving While Intoxicated were as follows:
 
 
 19
 1. That at the time and place charged in the complaint, the defendant was operating or driving a motor vehicle in the Municipality of Anchorage, and
 
 
 20
 2. At the time the defendant drove or operated said vehicle, he either
 
 
 21
 (a) was under the influence of intoxicating liquor, or
 
 
 22
 (b) had 0.10 grams or more of alcohol per 210 liters of his or her breath as determined by a chemical test within four hours of the offense alleged;
 
 
 23
 The jury was also provided instruction on the terms "under the influence of intoxicating liquor," and "as determined by a chemical test." Gundersen claims that the instruction on the term "as determined by a chemical test" shifted the burden of proof because the jury was not required to determine whether the results of the test were accurate beyond a reasonable doubt.
 
 
 24
 The instruction on the term "as determined by a chemical test" was as follows:
 
 
 25
 There has been evidence in this case that the defendant submitted to a breath test.
 
 
 26
 If you find that defendant took a breath test within four hours of the offense alleged and that an accurate result was obtained, you may infer from such result that the defendant's breath alcohol content at the time of the test was equal to or less than the defendant's breath alcohol content at the time he operated a motor vehicle.
 
 
 27
 However, if there is other evidence that the breath test did not produce a result which accurately reflected the defendant's breath alcohol level at the time of the test, or that the defendant's breath alcohol level may have been less than such result at the time he operated a motor vehicle, then you must consider all facts and circumstances in evidence in determining whether defendant's breath alcohol content was .10 grams of alcohol per 210 liters of breath or greater at the time he operated a motor vehicle, no longer relying exclusively on the results of the breath test.
 
 
 28
 (Emphasis added.) Although one sentence in this instruction provides that if the jury found that the test was accurate it could infer that Gundersen's breath alcohol content at the time he operated the vehicle was equal to or greater than the test results, when the two paragraphs are read together, the instruction does not provide that the jury may infer that the test was accurate. On the contrary, the rest of that instruction ensures that the jury would consider other evidence to determine whether it believed the test was accurate.
 
 
 29
 In addition to the entirety of the "as determined by a chemical test" instruction, the other instructions sufficiently emphasize the Government's burden of proof. The trial judge gave the following instruction in addition to the instructions quoted above:
 
 
 30
 The burden of proving the defendant guilty beyond a reasonable doubt rests upon the prosecution. This burden never shifts throughout the trial, for the law does not impose upon a defendant the burden of calling any witnessed or producing any evidence....
 
 
 31
 ... Since the burden is upon the prosecution to prove every essential element of the crime charged, beyond a reasonable doubt, a defendant has the right to rely upon the failure of the prosecution to prove every element.
 
 
 32
 The Government's burden of proving each element the crime charged beyond a reasonable doubt was made sufficiently clear to the jury. Considering the instructions as a whole, we conclude that they did not suggest to the jury that it could infer Gundersen was Driving While Intoxicated from breath test results that were not accurate beyond a reasonable doubt.
 
 
 33
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3